IN RE INTEREST OF S.R., A CHILD UNDER THE AGE
OF 18 YEARS.
STATE OF NEBRASKA, APPELLEE, V. D.R., APPELLEE.
L.R. AND S.R., APPELLANTS.
352 N.W.2d 141

Filed June 1, 1984. No. 83-631.

Paul E. Hofmeister of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant L.R.

Barry Waid, Deputy Scotts Bluff County Attorney, for appellee State.

Jerold Gilbert of Robert Gilbert Law Office, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

On September 18, 1981, the county attorney of Scotts Bluff County filed a petition in the county court for that county, seeking an adjudication of that court, acting as a juvenile court, that S.R., born December 4, 1980, was a child within the provisions of Neb. Rev. Stat. § 43-202(2) (Reissue 1978)—a statute repealed effective July 1, 1982, and replaced gen-

erally by Neb. Rev. Stat. § 43-247 (Cum. Supp. 1982) —in that S.R. was a child who lacked proper parental care by reason of the fault or habits of D.R., S.R.'s mother, or her neglect or refusal to provide proper care for the child, or that S.R. was in a situation dangerous to life or limb, or injurious to his health or morals. The petition also alleged that S.R.'s father was unknown and that S.R., since his birth, had been cared for by his grandparents, L.R. and S.R.

After hearing on November 19, 1981, S.R. was adjudged to be a child within the meaning of § 43-202(2). Pending a dispositional hearing, S.R. was placed in the temporary custody of his grandparents, S.R. and L.R.

On July 1, 1982, a dispositional hearing was held. After the hearing the court continued the dispositional portion of the hearing and placed the care, custody, and control of S.R. in the Scotts Bluff County Division of Social Services, with placement of S.R. in the home of his grandparents, S.R. and L.R. The court ordered S.R.'s mother to abide by certain conditions, including orders to refrain from drug and alcohol use, to maintain stable housing, to attend parenting classes at the Child Family Resource Program, and to obtain regular outpatient treatment for alcoholism.

On February 2, 1983, the office of the Scotts Bluff County attorney filed a motion to terminate the parental rights of D.R. on the grounds that she had not abided by any of the conditions imposed on her by the court on July 1, 1982, and that she was unfit "by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which is seriously detrimental to the health, morals, and well being of the juvenile."

Pursuant to this motion, the court issued a summons to L.R. and S.R., as "the present custodians" of S.R., to appear personally at the hearing to be

held on March 10, 1983. D.R. was notified of this hearing also.

On April 8, 1983, the court held a hearing to terminate parental rights. S.R.'s guardian ad litem was present, D.R. was present with counsel, and L.R. was present with counsel. Evidence was adduced by the State and by D.R. No other evidence was presented. At the conclusion of the hearing the court ordered "that the parental rights of [D.R.] with regard to [S.R.] are terminated. It is further ordered that a dispositional hearing be held with regard to placement of [S.R.] for adoption on the 19th day of May, 1983." No appeal was taken by anyone from this order.

On May 19, 1983, the "dispositional hearing" was held. At the hearing were S.R.'s guardian ad litem, L.R. and her attorney, the attorney for D.R., and the State's attorney. Evidence was adduced by S.R.'s guardian ad litem and by counsel for L.R. On ruling of the court that D.R. had no further interest in the proceeding, since the parental rights termination order of April 8, 1983, had become final, D.R.'s counsel presented no evidence. The court took the matter under advisement. On June 13, 1983, the court entered its order finding "that it is in the best interests of the child, [S.R.], to be removed from the temporary custody of [L.R. and S.R.], the child's grandparents, and placed for adoption with the Nebraska Children's Home Society," and so ordering.

From this order of the county court sitting as a juvenile court, "the custodian of [S.R.], [L.R.]," timely appealed to the district court. In connection with this appeal L.R. signed an affidavit stating that she is "the grandmother and legal custodian of [S.R.]."

Hearing was held on this appeal in the district court for Scotts Bluff County on July 8, 1983. At this hearing, apparently through the inadvertence of all counsel, it appears that the district court was misinformed. At this time, Paul Rehurek was repre-

senting, as he stated, the grandmother, but we presume that the representation was also for S.R.; the grandfather. The record is in confusion on this point. The appeal from county court to district court was taken on behalf of L.R. The notice of appeal to this court was filed for L.R. and S.R. The briefs submitted are on behalf of "Appellant [L.R.]." We are not informed that S.R. did not intend to pursue the appeal he requested by the notice of appeal herein, and if we were to believe that S.R. had ceased his efforts to appeal, L.R.'s position would be further weakened in that she could be promoting a home for S.R. wherein one of the custodians was not in favor of the relief sought.

At the July 8 district court hearing the following discussion was held:

THE COURT: Who appealed?

MR. GILBERT [guardian ad litem for S.R.]: Rehurek. The grandparents he represents, they were given temporary custody during the proceedings and the lower court awarded custody to the Department of Public Welfare for adoption.

THE COURT: The appearances are State by Barry Waid, Deputy County Attorney, Guardian Ad Litem for [S.R.] is Jerold Gilbert, and he is present.

Mr. Rehurek, who are your clients?

MR. REHUREK: My client is [L.R.].

THE COURT: That's the grandmother of the child?

MR. REHUREK: That's correct, Your Honor, and custodian.

THE COURT: And at one time custodian?

MR. REHUREK: Well, she's been custodian for about two years now, year and a half.

No one corrected the impression conveyed to the court that L.R. was the "custodian" of S.R. Careful examination of the record discloses that that was not the fact. At the time of the hearing of October 8, 1981, temporary custody of S.R. was placed in the

Scotts Bluff County Division of Social Services with "placement in the home of the child's grandparents, Mr. & Mrs. [R.]." On November 19, 1981, the court ordered that, pending the dispositional hearings, "the child shall be in the temporary custody of his grandparents, [S.R. and L.R.]"; but at the next hearing on July 1, 1982, the court ordered that, pending the dispositional order, S.R. was to be "placed in the home of his grandparents, [S.R. and L.R.]," and specifically that "[t]he juvenile shall be in the care, custody and control of the Scotts Bluff County Division of Social Services . . . ." This order as to custody was reaffirmed on March 10, 1983.

On July 26, 1983, the district court found that "though the propriety of the termination of parental rights was not questioned by the appellant, the termination . . . was proper." The court further found that "placement for purposes of adoption is proper after such a termination and that the Nebraska Children's Home is a proper placement in order to facilitate the adoption," and that "the specific identity of the adoptive parents is not a question to be determined upon this appeal and is a question to be determined by the Court presiding over the adoption proceeding." The district court affirmed the judgment of the juvenile court and remanded the cause to the juvenile court to effectuate its order.

It is from this order that appellants, the grandparents of S.R., have timely appealed. Appellants assign as error the finding of the district court affirming the juvenile court's determination that the best interests of S.R. required removing him from the physical custody of the grandparents and placing S.R. in the physical custody of the Nebraska Children's Home Society for adoption. The briefs of the parties address that question. Appellant's brief states at 3 that "[t]he essential determination for this Court to make is what should be done with [S.R.] following the termination of his mother's parental rights."

We have examined the record in detail, and while we generally would agree with the district court and the juvenile court as to the findings as to the best interests of S.R., we do not reach that question. The threshold question presented is the standing of the grandparents to challenge that order. There was no appeal from the order terminating the parental rights of S.R.'s mother. We hold that the grandparents of S.R. have no standing to challenge the order of placement for adoption. The appeal must be dismissed and the cause remanded to the juvenile court to implement its order of June 13, 1983.

With regard to the question of the standing of the grandparents to challenge the order directing that S.R. be placed for adoption, we are given guidance by our holding in *In re Interest of Ditter*, 212 Neb. 855, 326 N.W.2d 675 (1982). In that case we held at 859, 326 N.W.2d at 677, "that once parental rights of a child have been terminated as to a natural parent, the natural parents of such parent whose rights have been terminated are not entitled to continue visitation as a matter of right." In reaching that conclusion we stated at 856-57, 326 N.W.2d at 676:

[W]e believe that the general scheme regarding termination compels us to hold that once the natural parent's rights to a child have been terminated pursuant to the provisions of Neb. Rev. Stat. § 43-292 (Cum. Supp. 1982), formerly § 43-209 (Reissue 1978), the parents of the parent whose rights have been terminated likewise lose any legal right to visitation which might otherwise exist. To hold otherwise would seem to defeat the purpose of terminating parental rights.

Under the provisions of Neb. Rev. Stat. § 43-293 (Cum. Supp. 1982) "An order terminating the parent-juvenile relationship shall divest the parent and juvenile of all legal rights, privileges, duties, and obligations with respect to each other and the parents shall have no rights of inheritance with respect to such juve-

nile." It appears to us that if we are principally concerned with the best interests of the child (see, *In re Interest of J.L.L.*, 209 Neb. 76, 306 N.W.2d 175 (1981); *State v. A.H.*, 198 Neb. 444, 253 N.W.2d 283 (1977)), and by terminating parental rights we intend to divest any tie between the parent and child so that we may, as quickly as possible, find an adoptive family for the child and permit the child to begin anew, then little purpose would be served in continuing family ties between the grandparents and the child to be adopted. While that view is not unanimous throughout the country, it is the generally accepted view.

To give effect to that overall scheme it is mandatory to procedurally start the adoption proceeding by placing custody and placement of the juvenile with an appropriate entity that can oversee, and give legal consent to, the ultimate adoption. The grandparents in this case have no rights beyond the rights of any foster parents utilized to take physical possession of a juvenile while the courts attempt to, first, rehabilitate the natural parents so that they may become fit parents, and, second, if that rehabilitation effort fails and the natural parents' rights are terminated, to place the child in a home where the child may be adopted and thus regain parents to aid the child in his course through life. To argue custody as against adoption is to miss the whole point of the statutes providing for termination of parental rights and then the establishment of new parents through adoption in an effort to give the abandoned child real parents. We hold that grandparents, as such, do not have standing to interfere with the process of termination of parental rights and the adoptive procedures provided by our statutes. In so holding we do not in any way say or intimate that in appropriate circumstances and after appropriate legal consents and pursuant to proper court hearings and orders grandparents may not legally adopt their

grandchildren.   See *Matter of Fox*, 567 P.2d 985 (Okla. 1977).

The question remains as to the grandparents' right to a statutory appeal, as "custodians" of S.R.  Neb. Rev. Stat. § 24-541.01(3) (Cum. Supp. 1982) provides: "In cases of appeals from proceedings in the county court sitting as a juvenile court an appeal may be taken by:  . . .  (b)  The child's parent, custodian, or guardian."  It is clear that the child's custodian may appeal, but we now hold that "custodian" for purposes of § 24-541.01(3)(b) means legal custodian, that is, the person or entity given custody of a child by appropriate court order.  Mere "placement with" a person, or "possession of" a child, does not constitute the persons given such placement or possession as custodians.  The distinction between custody and possession has been recognized by our statutes in the area of juvenile law.  As an example, in Neb. Rev. Stat. § 43-263 (Cum. Supp. 1982), the statutes require service of summons on "the person who has custody of the juvenile or with whom the juvenile may be staying . . . ."

The grandparents, appellants in this case, are not such custodians, and therefore do not have standing to prosecute this appeal either due to their status as natural grandparents of the child in question or as the persons having the physical possession of the child.

The appeal is dismissed and the cause returned to the district court for remand to the juvenile court for implementation of that court's order of June 13, 1983.

APPEAL DISMISSED.