IN RE INTEREST OF ARTHARENA D.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. RENETTA D., APPELLEE,
AND CALVIN D. WASHINGTON, APPELLANT.

571 N.W. 2d 608

Filed December 19, 1997.   No. S-96-1174.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellant.

Linda Porter, Deputy Lancaster County Attorney, for appellee State.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

Calvin D. Washington appeals from an adjudication by the separate juvenile court of Lancaster County that Artharena D. was a minor falling within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) and should therefore be placed in the temporary legal custody of the then Nebraska Department of Social Services (DSS) pending final disposition. We conclude that Washington did not have standing to appeal and that this court therefore lacks appellate jurisdiction.

## FACTS

Artharena was born on April 11, 1994. Her natural mother is Renetta D. The record is unclear as to the identity of her biological father. On May 17, Renetta executed a handwritten and notarized document stating:

> To whom it may concern I [Renetta] am giving gaurding-ship [sic] to one C.D. Washington this gaurdingship [sic] is to provide for my two daughters one [Franseca D.] Born 10-10 and one [Artharena] born 4-11-94 this gaurdingship [sic] is to last only as long as I'm incarsarated [sic].

On or about May 10, 1996, DSS received a report from the Lincoln Police Department that a man dressed in female attire had invited an undercover police officer to enter a vehicle parked in a lot for the purpose of engaging in a sex act and that Artharena and Washington were present in the vehicle at the time of this incident. Bill Allen, a protective services worker employed by DSS, was assigned to investigate this report. On May 16, Allen contacted Washington and spoke with him regarding the incident in the parking lot. Washington told Allen that the name of the child in the vehicle during the incident was Artharena. He said that the child's mother was Renetta and that she was in prison in Kansas. Washington informed Allen that the child had been in his care since soon after her birth and that he had guardianship of the child.

Allen was unable to determine the whereabouts of Artharena from Washington and therefore requested the assistance of law enforcement authorities in locating the child. On May 22, 1996, Lincoln police learned that Washington was confined in the Lancaster County jail on unrelated charges. He had been incarcerated since May 17 and was subsequently released on bond on May 31.

Allen located Renetta at a halfway house for parolees in Kansas City, Missouri. In a telephone conversation with Renetta on May 23, 1996, Allen advised her of his investigation and Washington's incarceration. Renetta confirmed that she had given Washington permission to care for Artharena during her incarceration and said that she had had no contact with Washington for several weeks. She was uncertain as to the whereabouts of the child. Renetta also told Allen that she

planned to clean herself up, find an apartment, and reunite with her children. Allen gave Renetta his address and telephone number and asked her to contact him if she learned anything about the whereabouts of Artharena. On the following day, Allen learned that Renetta left the halfway house without permission, and he had no further communication with her.

Unable to find Artharena, authorities issued a press release and photograph which was aired by Lincoln and Omaha television stations on May 29, 1996. Shortly thereafter, Artharena was surrendered to Omaha police by a couple who reported that Washington had left the child with them approximately 2 weeks earlier. Allen returned the child to Lincoln where she was placed in foster care.

The State filed a petition on May 30, 1996, in the separate juvenile court of Lancaster County seeking adjudication that Artharena was a juvenile as defined by § 43-247(3)(a) in that she lacked "proper parental care by reason of the fault or habits of her custodian, Calvin D. Washington, and is homeless or destitute in Lancaster County, Nebraska, and/or in a situation dangerous to life or limb or injurious to the health or morals of such juvenile . . . ." The juvenile court entered an order on May 31, placing Artharena in the temporary legal custody of DSS.

Washington appeared at a hearing on June 5, 1996, and, at his request, the court appointed an attorney to represent him. At a hearing on July 9, Washington appeared with his appointed counsel, waived formal reading of the petition, and entered a denial of the allegations contained in the petition. On August 29, Washington filed a motion to discharge his appointed counsel which was heard and denied by the juvenile court on September 12.

A formal adjudication hearing was held on September 25 and 27 and October 4, 1996. On October 10, the juvenile court entered an adjudication order finding that Artharena was "a child as defined by Neb. Rev. Stat. §43-247(3a) by reason of the lack of proper parental care" and that she was "without proper support through the fault or habits of her custodian, Mr. Calvin D. Washington." The court continued final disposition pending completion of a predisposition report and plan. Washington appealed from this order. Pursuant to our authority to regulate

the dockets of the Nebraska Court of Appeals and this court, we removed the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Restated, Washington contends that the separate juvenile court erred in adjudicating Artharena as a juvenile as defined by § 43-247(3)(a). Washington also asserts that the separate juvenile court erred in overruling his motion to discharge his attorney and refusing to appoint substitute counsel. Finally, Washington contends that he received ineffective assistance of counsel prior to and during the adjudication hearing.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 1993 & Cum. Supp. 1996), are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Tabatha R.,* 252 Neb. 687, 564 N.W.2d 598 (1997), *modified* 252 Neb. 864, 566 N.W.2d 782; *In re Interest of Jeffrey R.,* 251 Neb. 250, 557 N.W.2d 220 (1996). In reviewing questions of law in such proceedings, the appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Tabatha R., supra; In re Interest of Krystal P. et al.,* 251 Neb. 320, 557 N.W.2d 26 (1996). A jurisdictional question which does not involve a factual dispute is a matter of law. *In re Interest of Noelle F. & Sarah F.,* 249 Neb. 628, 544 N.W.2d 509 (1996); *In re Interest of Alex T. et al.,* 248 Neb. 899, 540 N.W.2d 310 (1995).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Hall,* 252 Neb. 885, 566 N.W.2d 121 (1997); *State v. Wieczorek,* 252 Neb. 705, 565 N.W.2d 481 (1997); *Trew v. Trew,* 252 Neb. 555, 567 N.W.2d 284 (1997). An appellate court may, on its own motion, examine and determine whether the appellant has satisfied the requirements for appellate jurisdiction, including the requirement of standing. See, *Ponderosa Ridge LLC v. Banner County,* 250 Neb. 944, 554 N.W.2d 151 (1996); *State v. Baltimore,* 242 Neb. 562, 495 N.W.2d 921 (1993).

We addressed the issue of standing to appeal under the Nebraska Juvenile Code in *In re Interest of S.R.*, 217 Neb. 528, 352 N.W.2d 141 (1984). In that case, the grandparents of a juvenile who had cared for him since birth sought to appeal from an order of the county court sitting as a juvenile court terminating parental rights of the child's mother and placing the child in the custody of an adoption agency. The statute then in effect permitted the "parent, custodian, or guardian" of the juvenile to appeal a decision of a county court sitting as a juvenile court. We construed the word "custodian" in that statute as "the person or entity given custody of a child by appropriate court order." *Id.* at 535, 352 N.W.2d at 145. We stated: "Mere 'placement with' a person, or 'possession of' a child, does not constitute the persons given such placement or possession as custodians." *Id.* We concluded that because the grandparents did not meet this definition of "custodian," they lacked standing to appeal. *Id.*

After our decision in *In re Interest of S.R., supra*, and before Washington filed his notice of appeal in this case, the statute governing appeal in juvenile proceedings was amended by the Legislature. The relevant statutory language now provides that for the purposes of appeal, a "custodian or guardian shall include, but not be limited to, the Department of Health and Human Services, an association, or an individual to whose care the juvenile has been awarded pursuant to the Nebraska Juvenile Code." § 43-2,106.01(2)(c) (Cum. Supp. 1996).

Unless it appears to the contrary, it is presumed that in enacting amendatory legislation, the Legislature knew the preexisting state of the law, including the decisions of this court. See, *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995); *In re Hilbers Property Freehold Transfer*, 211 Neb. 268, 318 N.W.2d 265 (1982). Thus, if in a subsequent enactment on the same or similar subject the Legislature uses different terms in the same connection, a court must presume that the Legislature intended a change in the law. *Jeter v. Board of Education*, 231 Neb. 80, 435 N.W.2d 170 (1989). Moreover, in the absence of anything indicating the contrary, words used in a statute are to be given their ordinary meaning. See, *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997); *In re Estate of*

*Muchemore*, 252 Neb. 119, 560 N.W.2d 477 (1997); *Central Park Pharm. v. Nebraska Liq. Cont. Comm.*, 216 Neb. 676, 344 N.W.2d 918 (1984). Although the term "custodian," as ordinarily understood, includes one entrusted officially with guarding and keeping, it is also ordinarily understood to mean one that guards and protects or maintains. Webster's Third New International Dictionary, Unabridged 559 (1993).

Since we must assume that the Legislature was aware of our holding in *In re Interest of S.R.* and intended that the term "custodian" be given its ordinary meaning, we conclude that by providing that "custodian . . . shall include, *but not be limited to*, . . . an individual to whose care the juvenile has been awarded pursuant to the Nebraska Juvenile Code," (emphasis supplied) § 43-2,106.01(2)(c), the Legislature expressed an intention to expand the definition of "custodian" beyond the restrictive meaning we gave it in *In re Interest of S.R.* and to extend the right of appeal to individuals having the care of a juvenile by means other than an award under the Juvenile Code.

It is therefore necessary to determine the scope of the term "custodian" under § 43-2,106.01(2)(c). The U.S. Supreme Court has long recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children which is protected by the 14th Amendment and gives the parents the freedom to make personal choices in matters of family life. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). It would seem that the right of a parent to authorize another to assume temporary care of a child is part of the bundle of fundamental rights which composes the constitutionally protected liberty interests parents have in raising their children. While the State need not stand aside when presented with evidence of neglect or abuse, one empowered by parental authority to care for a child should have standing to appeal the State's interference with that parentally created relationship with the child.

In this case, Renetta authorized Washington to have custody of Artharena only as long as she was incarcerated. This was explicitly stated in the document signed by Renetta on May 17, 1994, and was subsequently confirmed by Renetta in her telephone conversation with Allen on May 23, 1996, approximately

1 week before the petition was filed in this case. Insofar as we can determine from the record, Renetta has not been subject to any form of incarceration since she left the halfway house within a day after her conversation with Allen. Thus, Washington had neither judicial nor parental authority to act as the "custodian" of Artharena at any time during the pendency of this action. He therefore lacked statutory standing to appeal the order of the separate juvenile court. Accordingly, we dismiss the appeal without reaching Washington's assignments of error because of the absence of appellate jurisdiction.

APPEAL DISMISSED.