In re Interest of Enyce J. and Eternity M.,
children under 18 years of age.
State of Nebraska, appellee, v. Erica J.,
appellee, Mark S., appellant, and
Roberta S., appellee.

___ N.W.2d ___

Filed October 16, 2015.    No. S-14-1168.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Judgments: Jurisdiction.** A jurisdictional question that does not involve a factual dispute is a question of law.
3. **Interventions.** Whether a party has the right to intervene is a question of law.
4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusions reached by the trial court.
5. **Standing: Words and Phrases.** Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.
6. **Standing: Parties.** The purpose of the standing inquiry is to determine whether a person has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.
7. **Standing: Proof.** Persons claiming standing must show that their claim is premised on their own legal rights and not the rights of another.
8. **Parent and Child: Words and Phrases.** Persons stand in loco parentis to a child if they put themselves in the position of lawful parents by assuming the obligations incident to the parental relationship without formally adopting the child.
9. **Parent and Child.** The rights, duties, and liabilities of persons standing in loco parentis to a child are the same as those of the lawful parents.

10. **Parent and Child: Standing: Appeal and Error.** Foster parents, as such, do not have standing to appeal from an order changing a child's placement.
11. **Interventions: Juvenile Courts.** The rules for intervention in civil cases provide a guidepost in determining whether a person has the right to intervene in juvenile proceedings.
12. **Interventions.** As a prerequisite to intervention, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which the court may render in the action.
13. ____. An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right.
14. **Interventions: Parties.** An intervenor joins the proceedings as a party to defend his own rights or interests.
15. **Parent and Child: Interventions: Juvenile Courts.** Foster parents, as such, do not have an interest that entitles them to intervene in a juvenile case as a matter of right.
16. **Interventions: Jurisdiction: Equity.** Independent of the intervention statutes, a court with equitable jurisdiction may allow intervention as a matter of equity in a proper case.
17. **Juvenile Courts: Jurisdiction: Statutes.** A juvenile court is a statutorily created court of limited and special jurisdiction, and it has only the authority which the statutes confer on it.
18. **Juvenile Courts: Interventions: Equity: Statutes.** A juvenile court cannot allow persons to equitably intervene independent of the statutes.

Appeal from the Separate Juvenile Court of Douglas County: Wadie Thomas, Judge. Affirmed.

Nicholas E. Wurth, of Law Offices of Nicholas E. Wurth, P.C., for appellant Mark S. and appellee Roberta S.

Donald W. Kleine, Douglas County Attorney, Shakil Malik, and Jocelyn Brasher, Senior Certified Law Student, for appellee State of Nebraska.

Patrick A. Campagna and Britt H. Dudzinski, of Lustgarten & Roberts, P.C., L.L.O., for appellee Erica J.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

The juvenile court determined that it had jurisdiction over a minor child, Eternity M., because of the faults or habits of her mother, Erica J. The Nebraska Department of Health and Human Services (Department) placed Eternity with foster parents Mark S. and Roberta S. The court later dismissed Mark and Roberta's complaint to intervene and ordered the Department to place Eternity with her maternal aunt in Nevada.

Mark appeals. He argues that the court should have allowed him and Roberta to intervene and that a change of placement was not in Eternity's best interests. Erica argues that we do not have jurisdiction to review the placement order because Mark—as a foster parent—does not have standing. We conclude that Mark lacks standing to appeal the order changing Eternity's placement and that the court did not err by dismissing Mark and Roberta's complaint to intervene. We affirm.

## BACKGROUND

The Douglas County Sheriff arrested Erica in August 2013 regarding a homicide. Erica had one child, Enyce J., at the time of her arrest. In September 2013, the State petitioned to adjudicate Enyce under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008).

Erica gave birth to a daughter, Eternity, in April 2014. A Department employee spoke with Erica, who was under police restraint, at the hospital within 24 hours of the birth. Erica declined to identify the father but suggested that her sister, Deseyre M., who lived in Nevada, might be a placement resource.

On April 4, 2014, the State filed a second supplemental petition alleging that Eternity was within the juvenile court's jurisdiction under § 43-247(3)(a) (Supp. 2013). The court gave the Department temporary custody of Eternity.

One day later, the Department placed Eternity with Mark and Roberta. Six days later, the court ordered the Department to start background checks on several relatives for possible placement, including Deseyre.

In August 2014, the court held a hearing on the second supplemental petition. A family permanency specialist testified that she contacted Deseyre, gathered information from her, and requested an investigation under the Interstate Compact for the Placement of Children (ICPC).[1] The specialist explained that an ICPC investigation had to be completed because Deseyre did not live in Nebraska.

Later in August, the court determined that it had jurisdiction under § 43-247(3)(a). The court continued the Department's temporary custody and stated that the permanency objective was reunification.

In October 2014, Mark and Roberta filed a complaint to intervene. They alleged that they had been the "sole primary care takers, physical custodians and foster parents" of Eternity "since her birth." As a result, they had bonded with Eternity and stood in loco parentis to her. Mark and Roberta claimed that they wanted to intervene to object to any placement change.

About a week later, Erica moved to place Eternity with Deseyre. Erica was sentenced to 60 to 100 years' imprisonment for two felony convictions shortly thereafter. Mark and Roberta filed an objection to Erica's placement motion because the change would not be in Eternity's best interests.

In November 2014, the court held a hearing on Erica's motion to change placement. An attorney appeared for Mark and Roberta. The county attorney indicated that the ICPC report was not finished. The Department's attorney said that the Department favored placement with Deseyre "pending the ICPC results." On November 25, the court stated that it would

---

[1] Neb. Rev. Stat. § 43-1103 (Cum. Supp. 2014).

sustain the placement motion subject to the completion of the ICPC investigation.

About a week later, the court held a review hearing and a hearing on Mark and Roberta's complaint to intervene. Mark and Roberta's attorney was again present. The court told him that "foster parents are entitled to present evidence related to the issue of their fitness to serve as foster parents" and asked him if he had any evidence to offer. Mark and Roberta's attorney offered exhibit 30, an affidavit of Mark. The court received Mark's affidavit and asked the county attorney if the ICPC investigation was done. The county attorney said that it was, so the court decided to "combine the hearings." The court received several exhibits offered by the State, including the ICPC report. The court stated that Mark's affidavit "will be considered for purposes of all matters set today." Mark and Roberta's attorney did not offer any other evidence.

In Mark's affidavit, he averred that he was an accountant and that his wife, Roberta, was an elementary school teacher. Mark said that Eternity had bonded with him and Roberta. Mark did not think that removing Eternity from his and Roberta's home was in Eternity's best interests.

The ICPC report approved Deseyre for placement. Deseyre lives in Las Vegas, Nevada, with her mother. The report found that Deseyre was financially stable and had "the desire, resources and ability to provide a safe, nurturing home to a child."

On December 4, 2014, the court dismissed Mark and Roberta's complaint to intervene. The court stated that it had received an approved ICPC report for Deseyre and that Deseyre was Eternity's maternal aunt. It ordered the Department to "take immediate steps for placement of the child Eternity pursuant to and consistent with this Court's order today."

Mark appealed from the November 25 and December 4, 2014, orders.

## ASSIGNMENTS OF ERROR

Mark assigns, restated and renumbered, that the juvenile court erred by (1) determining that he lacked standing, (2) dismissing the complaint to intervene as a matter of right, (3) dismissing the complaint to intervene under equity principles, and (4) changing Eternity's placement.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.[2]

[2-4] A jurisdictional question that does not involve a factual dispute is a question of law.[3] Whether a party has the right to intervene is a question of law.[4] When reviewing questions of law, an appellate court resolves the questions independently of the conclusions reached by the trial court.[5]

## ANALYSIS

### Placement

Erica argues that we do not have jurisdiction to review the change of placement because, among other reasons, Mark does not have standing to appeal. Before reaching the legal issues presented for review, we must decide if we have jurisdiction.[6]

[5-7] Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.[7] The purpose of the standing inquiry is to determine whether a person has a

---

[2] *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

[3] *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015).

[4] *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012).

[5] *Id.*

[6] *Murray v. Stine, supra* note 3.

[7] See *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

legally protectable interest or right in the controversy that would benefit by the relief to be granted.[8] Persons claiming standing must show that their claim is premised on their own legal rights and not the rights of another.[9]

So, the standing issue turns on Mark and Roberta's rights, if any, and how the placement order affected their rights.[10] A parent has a fundamental liberty interest in the care, custody, and management of the child.[11] And the State has an interest in the placement of a child derived from its role as parens patriae.[12] Eternity's interests are represented by her guardian ad litem.[13] But what right or interest in a child's placement does a foster parent have?

Nearly 20 years ago, we held that a pair of foster parents had standing in *In re Interest of Jorius G. & Cheralee G.*[14] There, the children's mother relinquished her parental rights to the foster parents and entered into an open adoption with them. But the Department formed a negative opinion of the foster parents and sought to change the children's placement. The foster parents offered evidence in opposition to the change of placement, and the juvenile court decided to leave the children with them. The State appealed, arguing that the foster parents did not have standing to object to the proposed placement change.

We concluded that the foster parents did have standing. Under Neb. Rev. Stat. § 43-285(3) (Reissue 1993), a juvenile court could review a proposed change of placement "on its

---

[8] *Id.*

[9] See *id.*

[10] See *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

[11] *In re Interest of Artharena D.*, 253 Neb. 613, 571 N.W.2d 608 (1997).

[12] See *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[13] *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015).

[14] *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. 892, 546 N.W.2d 796 (1996).

own motion or upon the filing of an objection to the change by an interested party." Furthermore, Neb. Rev. Stat. § 43-1314 (Reissue 1993) gave foster parents the right to notice of and participation in court reviews of a child's placement.

Furthermore, the foster parents had standing because the mother had relinquished her parental rights to them. We had previously held that in a private adoption, the adoptive family stands on equal ground with a natural mother with respect to a determination of custody. So the foster parents had standing as "prospective adoptive parents."[15]

Relying on *In re Interest of Jorius G. & Cheralee G.*, the Nebraska Court of Appeals recently held in *In re Interest of Montana S.*[16] that a child's grandmother, who was the foster parent and successful intervenor, had standing to appeal from an order changing the child's placement. The Court of Appeals emphasized that the State had considered the grandmother for adoptive placement.

But we believe that *In re Interest of Jorius G. & Cheralee G.* and this case are distinguishable for several reasons. First, the relevant statutes have changed. For example, § 43-1314(2) (Cum. Supp. 2014) now cautions that notice to the foster parent of a hearing "shall not be construed to require that such foster parent . . . is a necessary party to the review or hearing."

And, after we decided *In re Interest of Jorius G. & Cheralee G.*, we held that the foster parent's right of participation under § 43-1314 is a narrow one.[17] The foster parent's right to participate does not extend to discovery, questioning, cross-examining, or calling witnesses beyond what is personally applicable to the foster parent's own qualifications.[18] Section 43-1314 gives foster parents a role in the proceeding, but it

---

[15] *Id.* at 896, 546 N.W.2d at 799.

[16] *In re Interest of Montana S.*, 21 Neb. App. 315, 837 N.W.2d 860 (2013).

[17] See *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002).

[18] *Id.*

does not confer on them a right, title, or interest in the subject matter of the controversy.

Finally, unlike the mother in *In re Interest of Jorius G. & Cheralee G.*, Erica has emphatically not relinquished her parental rights to Mark and Roberta. We have said that one with parental authorization to assume even the temporary care of a child has standing to appeal the State's interference with that parentally created relationship.[19] The right of a parent to authorize another to assume the care of a child is part of the bundle of fundamental rights which the federal constitution confers to parents.[20] The foster parents in *In re Interest of Jorius G. & Cheralee G.* came to court with some of the mother's fundamental rights. Erica did not share her bundle of rights with Mark and Roberta.

[8,9] Mark argues that he and Roberta could nevertheless exercise the rights of parents because they stood in loco parentis to Eternity. Persons stand in loco parentis to a child if they put themselves in the position of lawful parents by assuming the obligations incident to the parental relationship without formally adopting the child.[21] And the rights, duties, and liabilities of such persons are the same as those of the lawful parents.[22]

But Mark and Roberta did not stand in loco parentis to Eternity. Foster care is generally a short-term placement: It is a temporary measure for maintaining the child until the court can make a permanent disposition.[23] In fact, Mark averred that he knew of the request to place Eternity with Deseyre because the family permanency specialist "informed us early on that a potential relative existed."

---

[19] *In re Interest of Artharena D., supra* note 11.

[20] See *id.*

[21] *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011).

[22] *Id.*

[23] *In re Interest of Hastings*, 211 Neb. 209, 318 N.W.2d 80 (1982).

Furthermore, the Department's regulations limit a foster parent's role to something that is decidedly less than that of a lawful parent. For example, the caseworker, the parents, and the court decide if a ward who is at least 17 years of age can marry.[24] Foster parents do not have a say.[25] The caseworker, with the involvement of the parents, is responsible for making decisions about the child's medical treatment.[26] Foster parents can obtain emergency or routine medical treatment for the child only with the caseworker's consent.[27] Foster parents cannot require the child to practice their religious faith.[28] The child can change his religious faith to that of the foster parents only if the child's parents approve or, if the court has terminated parental rights, the caseworker believes that the religious conversion is in the child's best interests.[29] Foster parents cannot discipline a ward with "[p]hysical punishment of any kind"[30] or let the child be included on a hunting trip without the caseworker's approval.[31] And they absolutely cannot give the child a "BB gun."[32]

[10] In conclusion, Mark and Roberta—as foster parents—do not have a legal or equitable right, title, or interest in the subject matter of the controversy that gives them standing to appeal from the order changing Eternity's placement. So, we do not have jurisdiction to review the placement change. Foster parents have a statutory right to participate in review hearings, but this does not give them an interest in the child's

---

[24] 390 Neb. Admin. Code, ch. 11, § 002.01N (1998).

[25] See *id.*

[26] 390 Neb. Admin. Code, ch. 11, § 002.04F (2000).

[27] *Id.*

[28] 390 Neb. Admin. Code, ch. 11, § 002.01S (1998).

[29] *Id.*

[30] 390 Neb. Admin. Code, ch. 11, § 002.01E (1998).

[31] 390 Neb. Admin. Code, ch. 11, § 002.01H (1998).

[32] *Id.*

placement akin to the interest of a parent or the State. We disapprove of *In re Interest of Jorius G. & Cheralee G.*[33] and *In re Interest of Montana S.*[34] to the extent that they are inconsistent with this opinion.

## INTERVENTION

Although Mark does not have standing to appeal the order changing Eternity's placement, we do have jurisdiction over the order dismissing the complaint to intervene.[35] We note that the record betrays some confusion about the relationship between Mark and Roberta's statutory right to participate as foster parents and their complaint to intervene. Foster parents have a right to participate in review hearings under § 43-1314, and they may so participate whether or not they are parties.[36] But their ability to participate under the statute is less than that of a party. Particularly, the statutory right does not go beyond adducing evidence of the foster parent's own qualifications.[37] Mark and Roberta sought to intervene in the case, and if successful, they would have become parties and been able to participate beyond the narrow limits of § 43-1314. Mark argues that the juvenile court erred by not letting him and Roberta do so.

[11-14] The rules for intervention in civil cases provide a guidepost in determining whether a person has the right to intervene in juvenile proceedings.[38] As a prerequisite to intervention, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by

---

[33] *In re Interest of Jorius G. & Cheralee G., supra* note 14.

[34] *In re Interest of Montana S., supra* note 16.

[35] See *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985).

[36] See *In re Interest of Destiny S., supra* note 17.

[37] See *id.*

[38] See *id.*

the direct operation and legal effect of the judgment which the court may render in the action.[39] An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right.[40] An intervenor joins the proceedings as a party to defend his own rights or interests.[41]

[15] We held that foster parents are not entitled to intervene as a matter of right in *In re Interest of Destiny S.*[42] We are not inclined to overrule that decision, and as we understand from oral argument, Mark is not asking us to do so. As discussed, Mark and Roberta did not have a right, title, or interest in the subject matter of the controversy that gave them standing. Similarly, they did not have an interest that entitled them to intervene in the juvenile case as a matter of right.

[16] Nevertheless, Mark argues that the juvenile court should have let him and Roberta intervene as a matter of equity. Independent of the intervention statutes, a court with equitable jurisdiction may allow persons to intervene as a matter of equity in a proper case.[43] We review for an abuse of discretion a court's decision to allow or disallow equitable intervention.[44]

[17,18] But a juvenile court is a statutorily created court of limited and special jurisdiction.[45] It has only the authority

---

[39] *State ex rel. Lanman v. Board of Cty. Commissioners*, 277 Neb. 492, 763 N.W.2d 392 (2009).

[40] *Spear T Ranch v. Knaub*, 271 Neb. 578, 713 N.W.2d 489 (2006).

[41] See *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011).

[42] *In re Interest of Destiny S., supra* note 17.

[43] See, *Jeffrey B. v. Amy L., supra* note 4; *Colman v. Colman Foundation, Inc.*, 199 Neb. 263, 258 N.W.2d 128 (1977); *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962); 59 Am. Jur. 2d *Parties* § 148 (2012).

[44] *Colman v. Colman Foundation, Inc., supra* note 43.

[45] *In re Interest of Katrina R.*, 281 Neb. 907, 799 N.W.2d 673 (2011).

which the statutes confer on it.[46] So, the juvenile court could not allow Mark and Roberta to equitably intervene independent of the statutes. We recognize that we discussed equitable intervention in the context of a juvenile court in *In re Interest of Destiny S.*[47] To the extent that *In re Interest of Destiny S.* suggests that juvenile courts may allow persons to equitably intervene, we disapprove of it.

## CONCLUSION

We do not have jurisdiction to review the order changing Eternity's placement because Mark and Roberta, as foster parents, lack standing. We also conclude that Mark and Roberta were not entitled to intervene as of right and that the juvenile court lacked the power to allow them to equitably intervene.

AFFIRMED.

---

[46] *Id.*

[47] *In re Interest of Destiny S., supra* note 17.