Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/20/2016 11:06 AM CDT

Aline Bae Tanning, Inc., a Nebraska corporation, et al.,
appellants and cross-appellees, v. Nebraska Department
of Revenue, an agency of the State of Nebraska,
and Kimberly K. Conroy, Tax Commissioner,
appellees and cross-appellants.

JB & Associates, Inc., doing business as Suntan City,
a Nebraska corporation, appellant, v. Nebraska
Department of Revenue, an agency of the State
of Nebraska, and Kimberly K. Conroy,
Tax Commissioner, appellee.

___ N.W.2d ___

Filed May 20, 2016.    Nos. S-15-643, S-15-644.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
2. **Administrative Law: Statutes: Appeal and Error.** On review, an appellate court determines the meaning of a statute independently of the determination made by an administrative agency.
3. **Administrative Law: Parties: Standing: Appeal and Error.** Under the Administrative Procedure Act, only an aggrieved party may seek judicial review of an agency action; an appellate court addresses the aggrieved party in terms of standing.
4. **Parties: Standing: Jurisdiction.** A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.

5. **Standing: Words and Phrases.** Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.
6. **Taxation: Standing.** The consumer is the taxpayer of an admissions tax, and thus, only the consumer has standing to claim a refund.
7. **Taxation: Proof.** The legal incidence of a tax depends upon who the law declares has the ultimate burden of the tax.

Appeals from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Steve Grasz and Henry L. Wiedrich, of Husch Blackwell, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and KELCH, JJ., and IRWIN, Judge.

HEAVICAN, C.J.

## NATURE OF CASE

Several indoor tanning salon businesses appeal from the district court's decision affirming the denial of tax refund claims by the Tax Commissioner (Commissioner). The salons assert that the Nebraska Department of Revenue (Department) improperly collected more than $1.7 million in admissions taxes from the salons. The Commissioner reasoned that the salons were not the taxpayers and, therefore, found that the salons lacked standing to claim refunds. The district court affirmed the Commissioner's decision. The salons appealed, and we granted their petition to bypass. The Department and Commissioner cross-appeal, claiming the district court lacked subject matter jurisdiction over some of the claims. We affirm.

## BACKGROUND

In May 2013, Aline Bae Tanning, Inc.; Ashley Lynn's, Inc.; Maple 110 Tanning, L.L.C.; RSB LLC; Tanning Horizons,

L.L.C.; and Wilson-Bonn, L.L.C. (collectively Ashley Lynn's) filed a total of 15 claims for tax refunds with the Department. The Ashley Lynn's salons claimed refunds of admissions taxes on gross receipts totaling more than $1 million. In December 2013, JB & Associates, Inc., doing business as Suntan City (JB), filed a claim with the Department for a refund of over $600,000 in admissions tax.

Though not entirely clear, it appears that in November 2012, the Attorney General's office had issued an opinion that Neb. Rev. Stat. § 77-2703(1) (Reissue 2009) did not authorize subjecting tanning salons to admissions taxes. The Department has since repealed the regulation listing tanning salons among the businesses subject to the tax[1] and has ceased collecting the tax. The Ashley Lynn's and JB salons (collectively salons) argue that as the Attorney General had opined, they are not subject to the admissions tax and, as such, are entitled to a refund of the tax paid.

The Commissioner disallowed the Ashley Lynn's salons' claims on October 7, 2013, and disallowed JB's claims on December 31. The Commissioner sent all of the salons nearly identical letters separately denying each claim. The letters explained that "[a] refund of a tax improperly or erroneously collected can only be issued by the State directly to the purchaser who paid the tax." (Emphasis in original.)

The salons sought judicial review in both cases, naming both the Department and the Commissioner as defendants. In November 2013, the Ashley Lynn's salons filed one petition for all 15 of the Commissioner's disallowances. Each of the 15 disallowance notice letters were attached to the petition. JB filed a petition for judicial review in January 2014. The district court consolidated the two cases and heard arguments in January 2015.

---

[1] See 316 Neb. Admin. Code, ch. 1, § 044.06 (2013).

Neb. Rev. Stat. § 77-2708(2)(b) (Reissue 2009) permits "the person who made the overpayment" to file a claim for a refund of erroneously or illegally collected taxes. The district court below held that under § 77-2708 and our opinions in *Governors of Ak-Sar-Ben v. Department of Rev.* (Ak-Sar-Ben)[2] and *Anthony, Inc. v. City of Omaha*,[3] the salons were not the "person[s]" who made the overpayments and thus lacked standing to claim refunds.

The salons jointly appealed and petitioned for bypass, which this court granted. The Department and Commissioner cross-appealed. We affirm because the salons lack standing.

## ASSIGNMENTS OF ERROR

The salons assign, restated, that the district court erred by (1) finding the salons had no standing to claim refunds and (2) failing to reach the merits and find that the salons were entitled to refunds.

The Department and Commissioner cross-appeal, assigning that the district court erred in finding it had subject matter jurisdiction over the claims by the Ashley Lynn's salons.

## STANDARD OF REVIEW

[1] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA) may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[4]

---

[2] *Governors of Ak-Sar-Ben v. Department of Rev.*, 217 Neb. 518, 349 N.W.2d 385 (1984).

[3] *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012).

[4] *Liddell-Toney v. Department of Health & Human Servs.*, 281 Neb. 532, 797 N.W.2d 28 (2011).

[2] On review, an appellate court determines the meaning of a statute independently of the determination made by an administrative agency.[5]

## ANALYSIS

*Standing.*

In the salons' first assignment of error, they argue that the district court erred by affirming the Commissioner's conclusion that the salons lacked standing to claim refunds. Both the Commissioner and the district court found that the salons' customers, and not the salons themselves, were the proper parties to bring claims for refunds. We affirm the district court's determination, because the salons were not the taxpayers.

[3-5] Under the APA, only an "aggrieved party" may seek judicial review of an agency action.[6] We have addressed the "aggrieved party" in terms of standing.[7] A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.[8] Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.[9] Section 77-2708(2)(b) permits "the person who made the overpayment" to claim a refund of erroneously or illegally collected sales or use tax. Thus, only the person who made the overpayment has a real interest in the controversy of a sales tax refund claim.

---

[5] *CenTra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995).

[6] Neb. Rev. Stat. § 84-917(1) (Reissue 2014).

[7] See *Central Neb. Pub. Power v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[8] *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 801 N.W.2d 253 (2011).

[9] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[6] We have previously addressed whether businesses that remit admissions taxes to the Department have standing to claim refunds. In *Ak-Sar-Ben*, we held that operators of a horseracing track did not have standing to claim refunds of admissions taxes.[10] Instead, we determined that the consumer is the taxpayer and that thus, only the consumer has standing to claim a refund of admissions tax.

As we explained in *Ak-Sar-Ben*, § 77-2703 requires purchasers to pay the admissions tax to the seller, and then requires the seller to remit the tax to the Department. The tax constitutes both a debt of the purchaser to the seller, and of the seller to the State. The statute prohibits businesses from absorbing the cost of admissions taxes. Under the terms of § 77-2703, the tax revenue is merely held in trust by the seller for the State, and the State reimburses the seller for expenses associated with collection.

The salons argue that *Ak-Sar-Ben* is either inapplicable or incorrect. They assert that the legal incidence of the admissions tax falls upon the salons and that therefore, they are the persons who made the overpayments and who have standing.

[7] In *Anthony, Inc.*, we used the legal incidence test to determine whether a municipal tax on restaurants in Omaha, Nebraska, was a sales tax or an occupation tax.[11] As a municipality, Omaha was without the authority to impose a sales tax, but could establish an occupation tax. The primary difference between a sales tax and an occupation tax, we held, is who bears the legal incidence, or "who the law declares has the ultimate burden of the tax."[12] The legal incidence of a true sales tax falls upon the purchaser, whereas the legal incidence of an occupation tax is on the seller for the privilege of operating a particular type of business. Neither the name given to a

---

[10] *Ak-Sar-Ben, supra* note 2.

[11] *Anthony, Inc., supra* note 3.

[12] *Id*. at 877, 813 N.W.2d at 476.

tax, nor the fact that a tax is assessed from gross receipts, are dispositive of where the legal incidence falls.[13]

In *Anthony, Inc.*, we distinguished *Ak-Sar-Ben*, noting that § 77-2703 (at issue in both *Ak-Sar-Ben* and the present case) explicitly requires that the purchaser pay the cost of the admissions tax. The restaurant tax at issue in *Anthony, Inc.*, however, explicitly imposed the legal burden upon restaurants and merely gave restaurants the discretion to decide whether to pass along the cost (i.e., the economic incidence) to the purchaser. Therefore, we held that the restaurant tax was a valid exercise of municipal power to create occupation taxes.

The salons argue that *Ak-Sar-Ben* is not binding in this case because it is inconsistent with the test set forth in *Anthony, Inc*. In *Anthony, Inc.*, we stated:

> If the customer refuses to pay the occupation tax when itemized on his or her bill, action by the City will be taken against the restaurant, not against the consumer. Because the legal incidence of the tax falls on the business and not the customer, the Restaurant Tax is an occupation tax, not a sales tax.[14]

The salons argue that this passage supports the contention that legal incidence falls upon them, because taxes under § 77-2703(1)(a) "constitute[] a debt owed by the retailer to this state" and the retailers are subject to penalties for failure to perform collection duties and remit the taxes to the State.[15] The salons do not challenge their statutory duty to collect the taxes, nor do they challenge any penalties imposed for a failure to fulfill that duty.

Though the above language from *Anthony, Inc.* could appear to support the salons' contention, when read in context, it does not. In *Anthony, Inc.*, we clearly stated that the

---

[13] *Id.*

[14] *Id.* at 881-82, 813 N.W.2d at 479.

[15] See Neb. Rev. Stat. §§ 77-2709 and 77-2713(1) (Reissue 2009).

legal incidence of a tax depends upon "who the law declares has the *ultimate* burden of the tax."[16] That a party acting as a tax collector is subject to penalties for failing to perform its statutory duties is irrelevant. Rather, as we did in *Anthony, Inc.* and *Ak-Sar-Ben*, we must look backward from the point at which the Department receives the revenue until we find the final person legally liable for payment under the statute.

While § 77-2703(1)(a) calls the admissions tax a debt from the retailer to the State, the immediately preceding sentence specifically states that the tax "shall constitute a part of the purchase price and until collected shall be a debt from the consumer to the retailer and shall be recoverable at law in the same manner as other debts." Clearly, while the retailer is legally responsible for passing the revenue on to the Department, the ultimate burden of the tax falls upon the consumer who is legally liable to the retailer. Thus, the fact that retailers may be subject to penalties for failing to perform collection duties has no bearing upon our analysis; even when such penalties are imposed, the consumer is still liable for the tax under § 77-2703(1)(a). As the salons themselves admit, the legal incidence of a tax is not placed upon a retailer simply because the retailer "'is typically required to collect the tax . . . and remit it to the taxing authority.'"[17]

The salons argue that by looking backward in this manner, we are confusing legal incidence with economic incidence. To prove this point, the salons cite an array of case law from other jurisdictions. We have reviewed these cases and find that they are distinguishable; none of the cases interpret a statute that imposes liability upon the consumer in the same

---

[16] *Anthony, Inc., supra* note 3, 283 Neb. at 877, 813 N.W.2d at 476 (emphasis supplied).

[17] Brief for appellants at 25 (quoting *Southern Pacific Transp. Co. v. State*, 202 Ariz. 326, 44 P.3d 1006 (Ariz. App. 2002)).

manner as does § 77-2703.[18] Instead, the salons cite only to tax schemes in which retailers are permitted, but not required, to pass along costs to consumers. In other words, these cases consider scenarios in which the businesses shifted the economic incidence of a tax, but the legal incidence remained upon the businesses. Therefore, the cases cited by the salons are distinguishable.

The salons also allege due process violations. This argument fails because, as discussed above, the consumers are the taxpayers. As Neb. Rev. Stat. § 77-3905(6) (Reissue 2009) makes clear, taxes collected by retailers "as agent[s] for the State of Nebraska . . . shall constitute a trust fund in the hands of the . . . retailer . . . and shall be owned by the state." Therefore, in this narrow context, the taxes collected never belonged *to* the salons and the salons have no property interest in the taxes sufficient to warrant due process rights.

Finally, the salons assert that because § 77-2708(2)(c) prohibits refund claims of fewer than $2, none of their customers will be able to claim refunds and those customers' due process rights will be violated. Therefore, they argue, we should find that the salons have standing and permit the customers to seek refunds from the salons. We note three reasons this argument fails. First, the record does not contain evidence that no customers would have refund claims of $2 or greater. The salons claim that none of their customers paid more than $2 in admissions tax, but have not provided records of all of their customers' payments. Second, the salons do not have standing to challenge a statute's constitutionality on the basis of third-parties' due process rights; they have not shown that

---

[18] See, e.g., *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 324 P.3d 50, 171 Cal. Rptr. 3d 189 (2014); *South Cent. Bell Telephone Co. v. Olsen*, 669 S.W.2d 649 (Tenn. 1984); *Ferrara v. Director, Div. of Taxation*, 127 N.J. Super. 240, 317 A.2d 80 (1974); *Martin Oil Ser. Inc. v. Dept. of Revenue*, 49 Ill. 2d 260, 273 N.E.2d 823 (1971).

the $2 minimum in § 77-2708(2)(c) will cause a deprivation of their own protected rights.[19] Third, to find that the salons have standing in this case could limit customers' ability to later claim refunds.

As discussed in *Ak-Sar-Ben* and above, the customers were the taxpayers of the admissions tax. We will not rewrite the law and completely overhaul the refund scheme put in place by the Legislature because of a hypothetical argument the salons attempt to make on their customers' behalf.

For these reasons, we find that the salons do not have standing to claim a refund and their first assignment of error has no merit.

*Merits.*

Because we find that the salons did not have standing, we do not address whether the tanning salons' gross receipts should have been subject to the admissions tax. Therefore, we do not reach the salons' second assignment of error.

*Subject Matter Jurisdiction.*

On cross-appeal, the Department and Commissioner assign that the district court erred by finding it had subject matter jurisdiction over the 15 claims filed jointly by the Ashley Lynn's salons. We have already held that the Ashley Lynn's salons lacked standing; therefore, the district court lacked jurisdiction over the claims. Thus, we do not reach the assigned error on cross-appeal.

## CONCLUSION

The decision of the district court is affirmed.

Affirmed.

Irwin, Judge, not participating in the decision.
Stacy, J., not participating.

---

[19] See *Bullock v. J.B.*, 272 Neb. 738, 725 N.W.2d 401 (2006).