Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2016 09:07 AM CST

IN RE INTEREST OF NIZIGIYIMANA R.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. KRISTOPHER E.
AND STEPHANIE E., APPELLANTS.
___ N.W.2d ___

Filed December 16, 2016.    No. S-15-975.

1. **Jurisdiction: Interventions: Standing: Final Orders: Appeal and Error.** An appellate court exercises jurisdiction over an appeal from an order denying intervention even if the appellant would not have standing to appeal from the court's final order or judgment on the merits.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.

3. **Interventions.** Whether a nonparty has the right to intervene is a question of law.

4. **Statutes.** The meaning and interpretation of a statute present questions of law.

5. **Juvenile Courts: Interventions: Equity.** A juvenile court lacks authority to permit an equitable intervention.

6. **Juvenile Courts: Jurisdiction: Parties.** When a juvenile court adjudicates a child under Neb. Rev. Stat. § 43-247(3) (Reissue 2016), the court has exclusive original jurisdiction over the parties listed in § 43-247(5).

7. **Interventions: Minors.** Because the Nebraska Juvenile Code contains no specific provisions governing the rights of other persons to intervene in juvenile proceedings, the rules governing intervention in civil proceedings generally serve as a court's guidepost in determining whether nonparties can intervene.

8. **Interventions.** Under Neb. Rev. Stat. § 25-328 (Reissue 2016), to be entitled to intervene in an action, a nonparty must show a direct and legal interest. A nonparty must lose or gain by the direct operation and legal effect of the judgment that may be rendered in the action. A nonparty must allege facts showing that he or she possesses the requisite

legal interest in the subject matter of the action and must be joining the proceedings to defend his or her own rights or interests. An indirect, remote, or conjectural interest in the result of a proceeding will not establish intervention as a matter of right.

9. **Interventions: Pleadings.** In ruling on a request for leave to intervene, a court assumes that the nonparty's factual allegations are true.

10. **Statutes.** Where general and special provisions of statutes are in conflict, the general law yields to the special provision or more specific statute.

11. **Administrative Law: Minors.** Under Neb. Rev. Stat. §§ 43-1311.01 and 43-1311.02 (Reissue 2016), the Department of Health and Human Services' duties regarding siblings do not depend on whether both siblings are adjudicated under Neb. Rev. Stat. § 43-247 (Reissue 2016) or whether the department has placement authority for both siblings.

12. **Administrative Law: Minors: Legislature.** The Legislature has not created a private right of action for an adjudicated child's sibling to enforce the Department of Health and Human Services' duties under Neb. Rev. Stat. §§ 43-1311.01 and 43-1311.02 (Reissue 2016). Section 43-1311.02(3) specifically limits the right to enforce these duties to parties.

13. **Administrative Law: Minors: Parties.** The only persons who can enforce the Department of Health and Human Services' duties under Neb. Rev. Stat. § 43-1312.02 (Reissue 2016) are a guardian ad litem, on behalf of an adjudicated child, or an adjudicated child's parent, guardian, or custodian.

14. **Statutes: Legislature: Intent.** A court gives statutory language its plain and ordinary meaning and will not look beyond the statute to determine the legislative intent when the words are plain, direct, and unambiguous.

15. ____: ____: ____. When statutes dealing with the same subject matter do not show a contrary legislative intent, a court interprets them so that they are consistent, harmonious, and sensible.

16. **Statutes: Legislature: Minors: Words and Phrases.** Interpreting Neb. Rev. Stat. §§ 43-1311.01 and 43-1311.02 (Reissue 2016) so that they are consistent with the Nebraska Juvenile Code means that the Legislature's definition of a party in the juvenile code also applies to the term "party" in § 43-1311.02(3).

17. **Minors: Adoption: Parental Rights.** A preadoptive parent in a dependency proceeding is a foster parent whom a juvenile court has approved for a future adoption because a child's parent has surrendered his or her parental rights, a court-approved permanency plan does not call for the child's reunification with his or her parent, or the parents' parental rights have been or will be terminated.

Appeal from the County Court for Hall County: PHILIP M. MARTIN, JR., Judge. Affirmed.

Bruce E. Stephens, of Stephens Law Offices, P.C., L.L.O., for appellants.

Megan Alexander, Deputy Hall County Attorney, for appellee.

Stacie A. Goding, of Myers & Goding, P.C., L.L.O., guardian ad litem.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

## I. NATURE OF CASE

The appellants, Kristopher E. and Stephanie E., appeal from the juvenile court's order that denied them leave to intervene, on their daughter's behalf, to seek the placement and eventual adoption of Nizigiyimana R. (Ziggy). They had privately adopted Ziggy's younger sister, who was born after Ziggy was removed from her mother's home and placed in the custody of the Nebraska Department of Health and Human Services (Department), but before the court terminated the parental rights of Ziggy's parents. Kristopher and Stephanie sought Ziggy's placement and adoption to maintain and foster Ziggy's relationship with their daughter. But the juvenile court determined the Nebraska statutes implementing the federal Fostering Connections to Success and Increasing Adoptions Act of 2008 (FCA)[1] did not give them or their daughter any cognizable interests in the dependency proceeding. Kristopher and Stephanie appealed. We affirm.

We conclude that Neb. Rev. Stat. §§ 43-1311.01 and 43-1311.02 (Reissue 2016) do not permit a nonparty to seek a joint-sibling placement or define an adjudicated child's sibling

---

[1] See Pub. L. 110-351, 122 Stat. 3949.

as a party. Instead, the plain language of § 43-1311.02(3) permits only a party to move for a joint-sibling placement. We further conclude that Kristopher and Stephanie were not preadoptive parents with a right to participate in review hearings. Accordingly, we conclude that the juvenile court did not err in denying them leave to intervene on their daughter's behalf to seek a joint-sibling placement.

## II. BACKGROUND

### 1. FACTS PRECEDING
### INTERVENTION HEARING

On October 1, 2013, the State sought Ziggy's adjudication under Neb. Rev. Stat. § 43-274(3)(a) (Reissue 2008), when he was about 6 months old. In its December 2013 disposition order, the court continued Ziggy's placement with his foster parents with a goal of reunification. Ziggy had four older half siblings, ranging in age from 6 to 12, whom the Department placed with their great-grandmother and her husband. The couple adopted the older siblings in May 2014. That same month, Ziggy's parents had another child, who was Ziggy's full sister and about a year younger than him. She was born about 5 months after the court entered the disposition order calling for Ziggy's reunification with his parents.

Ziggy's younger sister, however, left the hospital in the custody of Kristopher and Stephanie because Ziggy's parents had consented to her private adoption. Ziggy's mother testified that she had asked Ziggy's great-grandmother for help in finding someone to adopt Ziggy's younger sister because she was not ready to have another child. Stephanie was a distant cousin to Ziggy and his siblings, and Ziggy's mother and father chose Kristopher and Stephanie as the adoptive parents. Ziggy's great-grandmother testified that she and her husband did not accept placement of Ziggy or his younger sister because of their ages and because she did not want their placement to interfere with the couple's adoption of Ziggy's older siblings.

Stephanie testified that shortly after Ziggy's parents gave her and Kristopher custody of Ziggy's sister in May 2014, they asked the Department to place Ziggy with them because they were licensed foster care providers. The Department denied their request. On November 17, they adopted Ziggy's younger sister. On December 11, the State moved to terminate the parental rights of Ziggy's parents.

Stephanie and Ziggy's great-grandmother arranged regular visits or contacts between Ziggy's younger sister and his four older half siblings to maintain their relationships. Beginning in January 2015, the Department allowed Ziggy to visit with his siblings as well. Ziggy's great-grandmother believed that Ziggy and his younger sister had developed a bond in the times they had visited.

On April 7, 2015, the State filed an amended motion to terminate the parental rights of Ziggy's parents. The next day, the court entered the termination order. The court ordered the Department to prepare a new permanency plan for adoption and scheduled a review hearing for the end of May. After the court terminated parental rights in April, the Department ceased Ziggy's visitations with his siblings.

On April 17, 2015, Kristopher and Stephanie filed a complaint to intervene. They alleged that they had adopted Ziggy's younger sister and wished to have Ziggy placed with them for adoption to preserve the siblings' familial relationship. They claimed a right to intervene because § 43-1311.02 requires the Department to make reasonable efforts for a joint-sibling placement. Alternatively, they sought equitable intervention for the same reason and because their intervention was in Ziggy's best interests. They attached a copy of the Department's regulations that required placement teams to give preference to adult relatives and siblings.

The Department objected to intervention by Kristopher and Stephanie. Regarding their daughter, it argued that she and Ziggy had no relationship before he was removed (because she was born after his removal) and that they had no legal

relationship solely because Ziggy's sister had been adopted. Regarding Kristopher and Stephanie, it argued that if a great-grandparent and foster parent cannot intervene under this court's prior holdings, then distant relatives also cannot. It argued that Kristopher and Stephanie did not have a substantial relationship with Ziggy or a sufficient interest to intervene because they had only received supervised visitations with him for a short period when he visited his siblings. It argued that the juvenile court was not bound by the Department's regulations but must consider a child's best interests and that Ziggy had bonded with his foster parents.

In May 2015, the court approved a case plan, which is not part of the record, calling for Ziggy's adoption. It scheduled a permanency hearing for November and a hearing on Kristopher and Stephanie's motion to intervene for July. In June, they moved to reinstate Ziggy's visitation with their daughter. They alleged that after they filed their complaint to intervene, the Department immediately discontinued the siblings' visitation. In July, they moved to have Ziggy placed with them and for an order permitting him to visit their daughter throughout the proceedings.

### 2. INTERVENTION HEARING

At the July intervention hearing, the court sustained the State's objection to Kristopher and Stephanie's offers of proof regarding their initial request to have Ziggy placed with them. For their offer of proof, Stephanie stated that she was related to Ziggy and that the Department did not provide her with a statutory notice about a relative's options to participate in a child's care and placement. The court agreed with the State that this proof was beyond the scope of whether she and Kristopher could intervene.

A caseworker testified that she had assisted another caseworker to place Ziggy with foster parents when he was removed from parental custody. She stated that to the best of her knowledge, when Ziggy was removed, his mother did

not mention Kristopher and Stephanie as possible relatives for placement. Similarly, she denied any knowledge that Ziggy's great-grandmother had identified them as a relative placement.

Kristopher and Stephanie argued that the Legislature had implemented the FCA through statutes that required the Department to (1) exercise due diligence to find a removed child's adult relatives and the parents of a sibling and (2) provide a specified notice to these persons that explains their options to participate in the care and placement of the child. They argued the new statutes required the Department to make reasonable efforts to place siblings in the same foster care or adoption placement and that those new statutes had superseded this court's decision in *In re Interest of Meridian H.*[2] They claimed standing to intervene as Ziggy's adult relatives and as the adoptive parents of his sister.

### 3. COURT'S ORDER

In its order, the court denied Kristopher and Stephanie's leave to intervene for six reasons. First, the court concluded their kinship relationship to Ziggy was too distant to warrant their intervention.

Second, the court implicitly concluded that the Department had complied with its duties under these facts. It stated that the Department's placement policies "were applicable at the time of the initial placement of the juvenile . . . where the juvenile remains currently, and that the Department is under no constraints at the present time to effect a change in placement in order to comply with regulations." The court reasoned that the Department had not placed Ziggy with a nonrelative until after the great-grandmother and her husband had declined Ziggy's placement with them: "The [FCA] arguments advanced by [Kristopher and Stephanie] are not appropriate to the present facts."

---

[2] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

Third, the court agreed with the State that even if Kristopher and Stephanie had a sufficient legal interest to intervene, they had not sought intervention before the trial started and had filed a complaint only after the parents' parental rights to Ziggy were terminated. It implicitly concluded that they had not complied with the requirement under Neb. Rev. Stat. § 25-328 (Reissue 2016) to seek intervention before the trial commenced.

Fourth, the court ruled that Kristopher and Stephanie did not have standing to intervene as preadoptive parents. Fifth, it determined that their daughter did not have any cognizable rights in the proceeding under federal or state law.

Finally, the court concluded that it would be improper to allow Kristopher and Stephanie to intervene under its equitable powers because Ziggy had lived with the foster parents since October 2013 and knew no one else as parents or family: "[I]t would not be in the best interest of the juvenile, or any juvenile for that matter, to disrupt a two year placement[,] particularly one that occurred in the earliest stages of the juvenile's life."

## III. ASSIGNMENTS OF ERROR

Kristopher and Stephanie assign, restated, that the court erred in (1) denying them leave to intervene and (2) excluding evidence which showed that the Department did not give them a statutory notice.

## IV. STANDARD OF REVIEW

[1-4] We exercise jurisdiction over an appeal from an order denying intervention even if the appellant would not have standing to appeal from the court's final order or judgment on the merits.[3] When reviewing questions of law, we resolve

---

[3] See *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015), citing *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985).

the questions independently of the lower court's conclusions.[4] Whether a nonparty has the right to intervene is a question of law.[5] The meaning and interpretation of a statute present questions of law.[6]

## V. ANALYSIS

### 1. Parties' Contentions

Kristopher and Stephanie claim that as the parents of Ziggy's younger sister, they have a legal right to intervene under Nebraska's new statutes implementing the FCA. They contend that these statutes give siblings a right to participate in review hearings and to be placed together unless the placement would be contrary to the safety or well-being of any sibling. They argue that the court erred in implicitly relying on *In re Interest of Meridian H.* to deny intervention because we held therein only that the federal FCA did not apply and their claim is under the newly implemented statutes.[7] They also claim they had standing to intervene as preadoptive parents under Neb. Rev. Stat. § 43-1314 (Reissue 2016) because it requires a juvenile court to permit preadoptive parents to participate in review hearings. Alternatively, they contend that the court erred in denying them leave to intervene as a matter of equity because Ziggy's placement with his sibling would be in his best interests. They argue that if they cannot intervene and argue for a joint-sibling placement, no other party will advocate for protecting these siblings' relationship.

The State contends that § 25-328 requires a party seeking to intervene to do so before a trial commences and that Kristopher and Stephanie failed to comply with this requirement. Alternatively, the State contends that they lacked standing under § 43-1311.02. It contends that the federal FCA is

---

[4] See *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016).

[5] *In re Interest of Enyce J. & Eternity M., supra* note 3.

[6] *Id.*

[7] See *In re Interest of Meridian H., supra* note 2.

substantively similar to § 43-1311.02 and that in *In re Interest of Meridian H.*, we stated that the FCA did not establish a legal interest that gave a sibling standing to intervene in a dependency proceeding.[8] The State argues that the Department's duties under § 43-1311.02 apply only when it has placement authority over both siblings and that its placement decisions cannot be held hostage to a parent's decision to place an unadjudicated child in a different home. It contends that interpreting § 43-1311.02 to apply to unadjudicated siblings would frustrate the juvenile code's goal of achieving permanency for adjudicated children. The guardian ad litem concurs, but also points out that we have held a juvenile court has no authority to permit an equitable intervention.

## 2. Juvenile Courts Have No Statutory Authority to Permit Equitable Intervention

[5] The guardian ad litem correctly argues that in *In re Interest of Enyce J. & Eternity M.*,[9] we held a juvenile court lacks authority to permit an equitable intervention. We did not issue our decision in *In re Interest of Enyce J. & Eternity M.* until after the juvenile court issued its order denying Kristopher and Stephanie leave to intervene. But because of this decision, we need not further address their argument that the court erred in not permitting an equitable intervention.

## 3. Juvenile Court's Authority to Permit Intervention Under § 25-328 Does Not Control

[6,7] When a juvenile court adjudicates a child under Neb. Rev. Stat. § 43-247(3) (Reissue 2016), the court has exclusive original jurisdiction over the parties listed in § 43-247(5).[10]

---

[8] See *id.*

[9] See *In re Interest of Enyce J. & Eternity M., supra* note 3.

[10] See Neb. Rev. Stat. § 43-246.01(1)(c) (Reissue 2016).

Section 43-247(5) defines the parties as the "parent, guardian, or custodian of any juvenile described in this section." But because the "juvenile code contains no specific provisions governing the rights of other persons to intervene in juvenile proceedings,"[11] we have held that the rules governing intervention in civil proceedings generally serve as a court's guidepost in determining whether nonparties can intervene.[12]

[8,9] Under § 25-328, to be entitled to intervene in an action, a nonparty must show a direct and legal interest.[13] A nonparty must lose or gain by the direct operation and legal effect of the judgment that may be rendered in the action.[14] A nonparty must allege facts showing that he or she possesses the requisite legal interest in the subject matter of the action[15] and must be joining the proceedings to defend his or her own rights or interests.[16] An indirect, remote, or conjectural interest in the result of a proceeding will not establish intervention as a matter of right.[17] In ruling on a request for leave to intervene, a court assumes that the nonparty's factual allegations are true.[18]

[10] As noted, the State argues that under § 25-328, a nonparty seeking to intervene as a matter of right must file a pleading "'before the trial commences.'"[19] This is certainly true in actions; however, we need not decide here how that requirement should interplay with our adoption of § 25-328

---

[11] *In re Interest of Destiny S.*, 263 Neb. 255, 259, 639 N.W.2d 400, 405 (2002), *disapproved in part, In re Interest of Enyce J. & Eternity M., supra* note 3.

[12] See *id.*

[13] See *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016).

[14] See *id.*

[15] See *Spear T Ranch v. Knaub*, 271 Neb. 578, 713 N.W.2d 489 (2006).

[16] See *In re Interest of Enyce J. & Eternity M., supra* note 3.

[17] See *id.*

[18] See *Spear T Ranch, supra* note 15.

[19] See *American Nat. Bank v. Medved*, 281 Neb. 799, 815, 801 N.W.2d 230, 242 (2011), quoting § 25-328.

as a guidepost for deciding intervention issues in juvenile proceedings, which are special proceedings—not actions. Where general and special provisions of statutes are in conflict, the general law yields to the special provision or more specific statute.[20] As we explain later, we conclude that the Legislature's new statutes implementing the FCA are more specific to the intervention issue presented here and therefore control.

### 4. § 43-1311.02 Precludes Adjudicated Child's Sibling From Intervening to Ask for Joint-Sibling Placement

Before determining whether an adjudicated child's sibling can intervene in a dependency proceeding to enforce the Department's duties, we must determine whether §§ 43-1311.01 and 43-1311.02 impose any duties on the Department to consider a placement with an unadjudicated sibling. As noted, the State argues that the Department's duties under § 43-1311.02 apply only when it has placement authority over both an adjudicated child and the child's sibling.

### (a) Department's Duties Regarding Siblings Are Not Limited to Siblings Who Are Wards of State

Since 1996, a goal of the juvenile code has been to "consider relatives as a preferred potential placement resource" when a child must be removed from parental custody.[21] Except for proceedings under the Nebraska Indian Child Welfare Act, the term "relative" includes a "brother, sister, . . . stepbrother, [and] stepsister."[22] Accordingly, since 1998, the Department's regulations have required its placement teams to give preference to placing a child with an appropriate adult relative over

---

[20] *Schaffer v. Cass County*, 290 Neb. 892, 863 N.W.2d 143 (2015).

[21] See 1996 Neb. Laws, L.B. 1001, § 2 (codified at Neb. Rev. Stat. § 43-246(5) (Reissue 2016)).

[22] See Neb. Rev. Stat. § 43-245(21) (Reissue 2016).

nonrelatives and to give preference to placing siblings together unless the placement would be detrimental to one or more of them.[23]

But in *In re Interest of Meridian H.*, we concluded that under Nebraska law, an unadjudicated sibling does not have a cognizable interest in a sibling relationship that is separate and distinct from the adjudicated child's interest.[24] We further concluded that the FCA does not establish any legal interest on the part of an unadjudicated sibling which could be affected by a juvenile court's placement order or serve as the basis for standing. In reaching that conclusion, we specifically noted that the FCA "does not require notice to relatives who are minors or to the parents or custodians of such minors."[25]

Nebraska's new statutes implementing the FCA, however, did not apply to our analysis in *In re Interest of Meridian H.* We believe that the State misreads these new statutes in arguing that the Department's duties apply only when it has placement authority over both an adjudicated child and the child's sibling.

In 2011, through L.B. 177,[26] the Legislature clarified and heightened the Department's duties to implement joint-sibling placements, sibling visitations, or ongoing contacts. The Legislature amended statutes in the Nebraska Juvenile Code and amended or enacted statutes in the Foster Care Review Act to comply with specific requirements of the FCA.[27] As relevant here, L.B. 177 was intended to comply with federal requirements that states use "due diligence to notify adult relatives when a child is removed from parental custody[, and

---

[23] See 390 Neb. Admin. Code, ch. 6, § 002.04 (1998).

[24] See *In re Interest of Meridian H., supra* note 2.

[25] *Id.* at 481, 798 N.W.2d at 108.

[26] 2011 Neb. Laws, L.B. 177 (effective Aug. 27, 2011).

[27] See Introducer's Statement of Intent, L.B. 177, Health and Human Services Committee, 102d Leg., 1st Sess. (Feb. 16, 2011).

make] efforts to place siblings together, or provide for sibling time if placement together is not possible."[28]

One statute that L.B. 177 amended was Neb. Rev. Stat. § 43-905 (Reissue 2008), which deals with the Department's responsibility to use care and diligence in finding a suitable home for a child committed to its legal custody. The Department must now "make reasonable efforts to accomplish joint-sibling placement or sibling visitation or ongoing interaction between siblings as provided in section 43-1311.02."[29]

Sections 43-1311.01 and 43-1311.02 are new statutes in the Foster Care Review Act created by L.B. 177.[30] Section 43-1311.01 imposes duties on the Department to identify and locate a child's adult relatives and notify them that the child has been removed from parental custody or that the child's parent has voluntarily placed the child with the Department. As originally enacted, within 30 days of the triggering event, the Department must locate and notify "any noncustodial parent[,] all grandparents, adult siblings, adult aunts, adult uncles, adult cousins, and adult relatives suggested by the child or the child's parents, except when that relative's history of family or domestic violence makes notification inappropriate."[31] The State must notify these persons in writing of any options they have to participate in the child's care and placement; the requirements for serving as a foster parent or other care provider; the training, services, and support available to children receiving such care; and information about guardianship assistance payments.[32]

In 2014, however, Congress amended 42 U.S.C. § 671,[33] which sets out the requirements for federally approved foster

---

[28] *Id.* See, also, 42 U.S.C. § 671 (2012 & Supp. II 2014).

[29] See L.B. 177, § 2 (codified at § 43-905(1) (Reissue 2016)).

[30] See L.B. 177, §§ 6 and 7.

[31] See § 43-1311.01(1) (Cum. Supp. 2014).

[32] *Id.*

[33] See Pub. L. 113-183, § 209(a)(1), 128 Stat. 1941.

care and adoption plans in order for states to receive specified federal funds.[34] As a result, in 2015, the Legislature amended § 43-1311.01 through L.B. 296[35] to comply with Congress' newest requirements.[36] The 2015 amendment extended the Department's duty to notify specified persons of a child's removal or voluntary placement with the Department to include "all parents who have legal custody of a sibling of the child."[37]

The newly created § 43-1311.02(1)(a) requires the Department to make reasonable efforts "to place a child and the child's siblings in the same foster care placement or adoptive placement, unless such placement is contrary to the safety or well-being of any of the siblings. This requirement applies even if the custody order of the siblings are made at separate times."

Under § 43-1311.02(1)(b), if the siblings are not placed together, the Department must provide the siblings and the court with the reasons for its conclusion that a joint placement would be contrary to the safety or well-being of one of them.

Under § 43-1311.02(2), if the Department does not make a joint-sibling placement, it must make reasonable efforts to provide for frequent sibling visitation or ongoing interaction, unless it "provides the siblings and the court with reasons why such sibling visitation or ongoing interaction would be contrary to the safety or well-being of any of the siblings."

Finally, under § 43-1311.02(5), unless a court has suspended or terminated sibling joint-placement or contact, then even if the parents' parental rights are terminated, the Department must make reasonable efforts to implement a joint-sibling placement. Alternatively, the Department must take specific

---

[34] See 45 C.F.R. § 1356.20(a) (2015).

[35] See 2015 Neb. Laws, L.B. 296, § 1 (operative July 1, 2015).

[36] See Introducer's Statement of Intent, L.B. 296, Health and Human Services Committee, 104th Leg., 1st Sess. (Feb. 19, 2015).

[37] See § 43-1311.01(1) (Reissue 2016).

steps to facilitate sibling visitation or ongoing interaction between an adjudicated child and the child's siblings when the child is adopted or enters into a permanent placement.[38]

L.B. 177 defined "siblings" in the Foster Care Review Act to mean "biological siblings and legal siblings, including, but not limited to, half-siblings and stepsiblings."[39] It also amended the definition of a "family unit" to clarify that "for purposes of potential sibling placement, the child's family unit shall also include the child's siblings even if the child has not resided with such siblings prior to placement in foster care."[40] In 2015, to comply with the new FCA requirements,[41] the Legislature amended § 43-1311.01 to specify that the term "sibling" means an individual considered to be a sibling but for a termination of parental rights or other disruption of parental rights such as the death of a parent.[42]

In short, under §§ 43-1311.01 and 43-1311.02, the Department's duties to make reasonable efforts to implement a joint-sibling placement do not depend upon the continued existence of the parent-child relationship with each of the siblings. The Department's duties exist even if the siblings' custody orders were entered at separate times, even if a court has terminated a parent's relationship with each child, and even if the siblings have not previously lived together.

Additionally, the Foster Care Review Act defines "foster care placements" to include placements made by a parent.[43] So the Department's duty under § 43-1131.02(1)(a) to make reasonable efforts to place an adjudicated child and the child's siblings in the "same foster care placement or adoptive

---

[38] See § 43-1311.02(5).

[39] L.B. 177, § 3 (codified at Neb. Rev. Stat. § 43-1301(10) (Reissue 2016)).

[40] *Id.* (codified at § 43-1301(7)).

[41] See Introducer's Statement of Intent, L.B. 296, *supra* note 36.

[42] See L.B. 296, § 1.

[43] See § 43-1301(4).

placement" does not show that the Department's duties apply only when both the child and the sibling are wards of the state. Any doubt that the Department's duties extend to joint-sibling placements with unadjudicated siblings was put to rest by the Legislature's 2015 amendment to § 43-1311.01(1).

As stated, before 2015, the Department's notification duties under § 43-1311.01(1) were limited to a child's noncustodial parent, grandparents, and specified adult relatives. Since July 2015, however, that statute also requires the Department to notify "all parents *who have legal custody of a sibling*" of a child's removal from parental custody and of their option to participate in the care and placement of the child.[44]

The Legislature did not limit the amended notice requirement to those parents who have legal custody of a removed child's sibling through a juvenile court's order. Instead, the "legal custody" requirement includes those parents who have legal custody of a child's full sibling under an adoption decree and those parents whose parental rights to a half sibling or stepsibling are intact.[45] This interpretation is consistent with the Legislature's definition of a sibling to include half siblings and stepsiblings. Nor has the Legislature treated an adoption as severing the sibling relationship for the purpose of triggering the Department's duties under § 43-1311.02. As noted, even if an adjudicated child is adopted, the Department must take specific steps to facilitate sibling visitation or ongoing interaction "between the child and the child's siblings."[46]

Thus, the 2015 amendment created notification duties to the parents of an unadjudicated sibling for whom the Department does not serve as legal custodian. The only reasons to require the Department to notify the parents of an unadjudicated sibling is to ensure that they are aware that the child has been removed from parental custody and to ensure

---

[44] See § 43-1311.01(1) (emphasis supplied).

[45] See *id.* and § 43-1301(10).

[46] § 43-1311.02(5).

that the Department makes an effort to place the siblings together or to provide for sibling time if placement together is not possible.

[11] Reading §§ 43-1311.01 and 43-1311.02 harmoniously, as we must,[47] we conclude that under Nebraska's implementing statutes, the Department's duties regarding siblings do not depend on whether both siblings are adjudicated under § 43-247 or whether the Department has placement authority for both siblings. Instead, the Legislature intended for the Department to develop and maintain an adjudicated child's sibling relationships in a variety of circumstances.

### (b) Amendments Do Not Permit Siblings to Intervene

[12] Despite the Legislature's creation of new duties for the Department to preserve sibling relationships, it has not created a private right of action for an adjudicated child's sibling to enforce the Department's duties under §§ 43-1311.01 and 43-1311.02. Instead, § 43-1311.02(3) specifically limits the right to enforce these duties to parties: "Parties to the case may file a motion for joint-sibling placement, sibling visitation, or ongoing interaction between siblings." Of course, the Department's duty to make reasonable efforts for a joint-sibling placement, sibling visitation, or ongoing interaction between siblings exists even if no party moves for that placement, visitation, or interaction. So we read § 43-1311.02(3) as a statutory remedy to enforce the Department's duties. And that remedy is limited to "parties."

The juvenile code defines a party to a juvenile proceeding in two different statutes. Section 43-245(19) provides that "[p]arties means the juvenile as described in section 43-247 and his or her parent, guardian, or custodian." As noted, when a child is adjudicated under § 43-247(3), a juvenile court has exclusive original jurisdiction over a party listed in

---

[47] See, e.g., *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

§ 43-247(5),[48] which also gives the court jurisdiction over the "parent, guardian, or custodian of any juvenile described in this section."

[13] Under the Foster Care Review Act, the Legislature has not enacted a definition of "party" that shows a court should consider an adjudicated child's sibling to be a party for the purpose of moving for a joint-sibling placement, sibling visitation, or ongoing sibling interaction.[49] Nor does § 43-1312.02 include an intervention provision that would permit a nonparty to seek a joint-sibling placement. Thus, we conclude that the only persons who can enforce the Department's duties under § 43-1312.02 are a guardian ad litem, on behalf of an adjudicated child, or an adjudicated child's parent, guardian, or custodian.

We recognize that under § 25-328, we have previously held a grandparent has a limited right to intervene in a dependency proceeding involving his or her grandchild. In *In re Interest of Kayle C. & Kylee C.*,[50] we reasoned, in part, that § 43-247(5) identified the necessary parties to a juvenile proceeding under § 43-247, but determined that the list was not exclusive. Thus, because grandparents can otherwise show a substantial interest in the proceeding, they can intervene to be heard on their fitness to accept placement of a grandchild or to act as the child's legal custodian.

However, that reasoning does not apply here because this intervention issue is not governed by § 25-328. Where general and special provisions of statutes are in conflict, the general law yields to the special provision or more specific statute.[51] We conclude that § 43-1311.02(3) controls here because it specifically provides that "parties" may move for a "joint-sibling

---

[48] See § 43-246.01(1)(c). See, also, § 43-245(19).

[49] See § 43-1301.

[50] *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998).

[51] *Schaffer, supra* note 20.

placement, sibling visitation, or ongoing interaction between the siblings."

[14-16] A court gives statutory language its plain and ordinary meaning and will not look beyond the statute to determine the legislative intent when the words are plain, direct, and unambiguous.[52] Obviously, if the Legislature had intended to permit a nonparty to intervene or to include a sibling as a party, it could have enacted such provisions. Moreover, when statutes dealing with the same subject matter do not show a contrary legislative intent, a court interprets them so that they are consistent, harmonious, and sensible.[53] Sections 43-1311.01 and 43-1311.02 deal with the Department's notification and placement duties for children who are wards of the state under the juvenile code. Interpreting these statutes so that they are consistent with the juvenile code means that the Legislature's definition of a party in the juvenile code also applies to the term "party" in § 43-1311.02(3). Accordingly, because Kristopher and Stephanie's daughter was not a party to the proceeding, § 43-1311.02(3) precluded them from intervening on her behalf to ask for a joint-sibling placement.

5. Parent of Adjudicated Child's Sibling
Does Not Have Automatic Status
as Preadoptive Parent

We reject Kristopher and Stephanie's contention that they had standing to intervene under § 43-1314 as Ziggy's preadoptive parents. That statute deals with the right to notice and to participate in a court review or hearing in juvenile proceedings. Section 43-1314(2) requires a juvenile court to give notice of review proceedings to specified persons, including a child's preadoptive parent, so that they may participate in the proceeding. But it specifically provides that the notice

---

[52] See *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013).

[53] See *Cisneros, supra* note 47.

requirement does not mean that these participants are necessary parties. Kristopher and Stephanie appear to argue that because the Department must consider joint-sibling placement, sibling visitation, or ongoing interaction between Ziggy and his sister, including adoption, they have standing to intervene as Ziggy's preadoptive parents.

Neither the Nebraska Juvenile Code, the Foster Care Review Act, nor the Department's regulations define the term "preadoptive" parent or "preadoptive" placement. However, Neb. Rev. Stat. § 43-1312(2) (Reissue 2016) governs the Department's duties when its investigation of a child's circumstances reveals that a juvenile court is unlikely to return a child to parental custody. In that event, the Department

> shall recommend termination of parental rights and referral for adoption, guardianship, placement with a relative, or, as a last resort, and only in the case of a child who has attained sixteen years of age, another planned permanent living arrangement. If the child is removed from his or her home, the [D]epartment shall make reasonable efforts to accomplish joint-sibling placement or sibling visitation or ongoing interaction between the siblings as provided in section 43-1311.02.[54]

Additionally, § 43-1312(3) requires a juvenile court to conduct a permanency hearing for a child in foster care no later than 12 months from the date the child entered foster care and annually thereafter. At a permanency hearing, the court must determine whether the permanency plan is appropriate and, when applicable, determine whether the child will be returned to the parent, referred to the State for termination of parental rights, placed for adoption, or referred for a guardianship.[55]

[17] The Department's duties under § 43-1312 are consistent with understanding that the term preadoptive parent

---

[54] § 43-1312(2).

[55] See § 43-1312(3).

means the following: A preadoptive parent in a dependency proceeding is a foster parent whom a juvenile court has approved for a future adoption because a child's parent has surrendered his or her parental rights, a court-approved permanency plan does not call for the child's reunification with his or her parent, or the parents' parental rights have been or will be terminated.[56]

Kristopher and Stephanie did not have the status of preadoptive parents because the juvenile court had not placed Ziggy in their care for a future adoption. We agree that the Department had a duty to make reasonable efforts to accomplish a joint-sibling placement with their daughter. But the Legislature has explicitly limited the remedy of enforcing that duty to the parties, and they were not parties to the dependency proceeding.

## VI. CONCLUSION

We conclude that the court correctly denied Kristopher and Stephanie leave to intervene in this dependency proceeding. We agree that Nebraska's statutes implementing the FCA create new duties for the Department to make reasonable efforts for a joint-sibling placement even if an adjudicated child's sibling is not a ward of the state and has not previously lived with the adjudicated child. However, the creation of these new duties upon the Department does not bestow new rights upon nonparties. Because neither Kristopher and Stephanie nor their daughter are parties to the proceeding, they have no right to intervene to enforce the Department's duties.

Affirmed.

---

[56] See 1 Joan Heifetz Hollinger et al., Adoption Law and Practice § 3.02[2] (2016).