Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

In re Interest of Jordon B., a child
under 18 years of age.
State of Nebraska and Nebraska Department of
Health and Human Services, appellees, v. Allen B.
and Leah B., appellees, Christina Boydston,
guardian ad litem for Jordon B., appellee
and cross-appellant, Jason D. on behalf
of J.D. and L.D., intervenor-appellee,
and Andrew Todd and Alicia Todd,
appellants and cross-appellees.

___ N.W.2d ___

Filed November 4, 2022.    No. S-22-019.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.

2. **Judgments: Jurisdiction.** A jurisdictional question that does not involve a factual dispute is a question of law.

3. **Interventions.** Whether a party has the right to intervene is a question of law.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusions reached by the trial court.

5. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

6. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

7. **Standing: Jurisdiction.** Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.

8. **Juvenile Courts: Standing: Appeal and Error.** The right of appeal in a juvenile case in Nebraska is purely statutory, and Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016) controls who has the right to appeal from a juvenile court's placement order.

9. **Juvenile Courts: Parent and Child.** Foster parents who were never awarded custody are not "custodians" or "guardians" for purposes of Neb. Rev. Stat. § 43-2,106.01(2)(c) (Reissue 2016).

10. **Parent and Child: Standing: Appeal and Error.** Foster parents do not have a legal or equitable right, title, or interest in the subject matter of the controversy that gives them standing to appeal from an order changing a child's placement.

11. **Parent and Child: Statutes: Interventions.** Although foster parents have a statutory right to participate in review hearings, their ability to participate is less than that of a party, and foster parents are not entitled to intervene as a matter of right.

12. **Juvenile Courts: Jurisdiction: Statutes: Parent and Child: Interventions: Equity.** A juvenile court, as a statutorily created court of limited jurisdiction, has only the authority which the statutes confer on it, and therefore, a juvenile court cannot allow foster parents to equitably intervene independently of the statutes.

13. **Juvenile Courts: Appeal and Error.** The fact that a person has two different relationships to a child does not confer that person with a right to appeal when neither is a relationship listed in Neb. Rev. Stat. § 43-2,106.01(2) (Reissue 2016).

14. **Jurisdiction: Interventions: Standing: Final Orders: Appeal and Error.** An appellate court exercises jurisdiction over an appeal from an order denying intervention even if the appellant would not have standing to appeal from the court's final order or judgment on the merits.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

16. **Minors: Words and Phrases.** "Sibling," under the Foster Care Review Act generally and under Neb. Rev. Stat. § 43-1311.02(9) (Cum. Supp. 2020) specifically, means a person with whom one shares a common parent or parents.

17. **Appeal and Error.** An issue not presented to or decided by the trial court is not appropriate for consideration on appeal.

Appeal from the County Court for Dodge County: Kenneth J. Vampola, Judge. Affirmed.

Linsey A. Camplin and Sam Baue, of McHenry, Haszard, Roth, Hupp, Burkholder, Blomenberg & Camplin, P.C., L.L.O., for appellants.

Leslie E. Remus and Trevor J. Rogers, Senior Certified Law Student, for appellee Nebraska Department of Health and Human Services.

Brianna L. McLarty, Deputy Dodge County Attorney, for appellee State of Nebraska.

Timothy E. Sopinski, of Sopinski Law Office, for appellee Allen B.

Adam R. Tripp, of Tripp Law Office, for appellee Leah B.

Pamela Lynn Hopkins, of Hopkins Law Office, L.L.C., for guardian ad litem.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

### NATURE OF CASE

Andrew Todd and Alicia Todd appeal the order of the juvenile court for Dodge County which granted a change of placement for Jordon B. They claim that they have certain rights as foster parents, and they claim error in, inter alia, the juvenile court's determination that Andrew did not have standing to intervene as an adult sibling of Jordon. In addition, Christina Boydston, Jordon's guardian ad litem, cross-appeals and claims that the juvenile court erred when it found that Andrew was a "sibling" of Jordon and when it failed to appoint counsel to represent her or new counsel to represent Jordon after Andrew challenged the credibility and veracity of her guardian ad litem report.

We determine that as foster parents, the Todds do not have standing to appeal the juvenile court's placement order or the

right to intervene as parties. We further determine that Andrew is not a "sibling" to Jordon, and for that reason, the juvenile court did not err when it denied Andrew's petition to intervene. We further determine that the record does not show the guardian ad litem requested appointment of counsel for herself or new counsel for Jordon and that therefore, the juvenile court did not err when it failed to make such appointments. We therefore affirm the juvenile court's order.

## STATEMENT OF FACTS

Jordon was born in September 2020, and his biological parents were Leah B. and Allen B. The Nebraska Department of Health and Human Services (DHHS) removed Jordon from Leah and Allen's home on September 25. The juvenile court for Dodge County granted temporary custody of Jordon to DHHS based on concerns that Leah and Allen were not able to care for him and provide an accurate feeding schedule. Such concerns were based in part on the fact that two older sons of Leah and Allen had been removed from their custody for similar reasons. The court appointed Boydston as Jordon's guardian ad litem.

Jordon was initially placed with Jason D. and Lesley D. Jason is Leah's father, and Lesley is Leah's stepmother by virtue of her marriage to Jason. Jason and Lesley had adopted Jordon's two older brothers after Leah's and Allen's parental rights to the two were terminated.

After Jason and Lesley advised DHHS that they could not provide permanency or long-term care to Jordon, DHHS placed Jordon with the Todds. Andrew is Lesley's adult biological son. Andrew is not biologically related to Leah, but he is her stepbrother by virtue of his mother Lesley's marriage to Leah's father, Jason. Andrew is also a sibling to Jordon's two older brothers by virtue of Lesley's adoption of the two boys.

In an order filed December 9, 2020, the court adjudicated Jordon to be a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The court later approved a case

plan with a primary permanency plan of reunification, but the court determined that custody should remain with DHHS and that Jordon should remain in out-of-home placement.

On July 14, 2021, Leah filed a motion for change of placement in which she requested that Jordon's placement be changed to the residence of Rita Pospishil, who is Allen's cousin. On the same day, Jason, as biological grandfather and adoptive father, filed a complaint on behalf of Jordon's two older brothers requesting that they be allowed to intervene in this case to seek a joint-sibling placement of Jordon with them in Jason and Lesley's home. The court allowed Jason to intervene on behalf of the brothers, and it set a hearing on the request for joint-sibling placement and on Leah's motion to change placement to Pospishil. The court ordered submission of reports prior to the hearing, including, inter alia, a home study with regard to Pospishil and a guardian ad litem report. The hearing was set for September 16.

On September 9, 2021, the Todds filed a motion to intervene in the case. They sought to intervene as Jordon's foster parents, and they alleged that Jordon had been placed with them for most of his life and that it was in Jordon's best interests to continue placement with them. Andrew also alleged that he was a relative of Jordon. He alleged that he was a stepuncle to Jordon based on his stepsibling relationship with Leah and that he was also a stepbrother to Jordon based on his mother Lesley's adoption of Jordon's two older brothers. Andrew alleged that he was a sibling of Jordon under the Foster Care Review Act (the Act) and that as a sibling he had an interest in the case.

After the hearing, the juvenile court filed an order on October 27, 2021, in which it ruled on pending motions. The court first addressed the Todds' motion to intervene. The court determined that the Todds did not have standing to intervene on the basis that they were Jordon's foster parents. The court cited *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015), for the proposition that

although foster parents have a statutory right to participate in review hearings, their ability to participate was less than that of a party, and that foster parents do not have an interest that entitles them to intervene in a juvenile case as a matter of right.

The court then turned to Andrew's request to intervene on the basis that he was a sibling of Jordon. The court defined the issue as being "whether Andrew . . . has standing to intervene as an adult stepbrother to Jordon pursuant to Neb. Rev. Stat. [§] 43-1311.02." The court cited Neb. Rev. Stat. § 43-1311.02(1)(a) (Cum. Supp. 2020), which provides as follows:

> Reasonable efforts shall be made to place a child and the child's siblings in the same foster care placement or adoptive placement, unless such placement is contrary to the safety or well-being of any of the siblings. This requirement applies even if the custody orders of the siblings are made at separate times and even if the children have no preexisting relationship.

The court cited *In re Interest of Nizigiyimana R.*, 295 Neb. 324, 889 N.W.2d 362 (2016), in which we held that the duty to make reasonable efforts to implement a joint-sibling placement existed even if a court had terminated a parent's relationship with each child and even if the siblings had not previously lived together and that the duty extended to joint-sibling placements with unadjudicated siblings. The court also referenced § 43-1311.02(9), which generally provides that a sibling of a juvenile has a right to intervene for limited purposes. The court noted that § 43-1311.02(1)(a) referred specifically to situations in which the "children" have no preexisting relationship. The court read this reference to mean that § 43-1311.02 applied only to siblings who were children, and it noted that the statute made no reference to adult siblings. The court therefore concluded that "the limited right to seek 'joint-sibling placement, sibling visitation, or ongoing interaction with their sibling' in subsection (9) belongs

to minor siblings only." The court therefore denied Andrew's motion to intervene as a sibling of Jordon.

In its October 27, 2021, order, the court next addressed Leah's motion to change Jordon's placement to Pospishil and the older brothers' request for placement with them in Jason and Lesley's home. The court noted that DHHS had complied with § 43-1311.02(1)(a) when it initially placed Jordon in Jason and Lesley's home. The court, however, further noted the testimony of a DHHS caseworker that Jordon's placement had been changed because Jason and Lesley were "incapable or unwilling to provide care for Jordon" and that therefore, "it was not in Jordon's best interest to put him in a home . . . that was unable to provide for his basic needs due to the reported issues of the other children in the home." The caseworker further testified that Jason and Lesley had not subsequently asked that DHHS place Jordon back in their home and that the caseworker did not become aware they were interested in taking placement until the motion in this case was filed.

The court found that the primary permanency plan in this case was reunification of Jordon with Leah and Allen and that Leah and Allen were making progress toward reunification. The court noted that the caseworker had testified that it was in Jordon's best interests to be in a placement that was more conducive to the plan of reunification and that the caseworker opined that Pospishil's relationship with Leah and Allen was conducive to that goal although Jason and Lesley's relationship was less conducive and could negatively affect the goal of reunification.

The court stated that another witness who had supervised Leah and Allen's visitations with Jordon agreed that they were making good progress and that it was in Jordon's best interests to be in a placement with Pospishil, who would be conducive to the goal of reunification. The court further noted that the home study showed that Pospishil had a good relationship with Leah and Allen and that placement with her was recommended. Based on this evidence, the court found that it was

in Jordon's best interests to grant Leah's motion for change of placement to Pospishil, and it ordered DHHS to prepare a transition plan to effectuate the change. The court overruled motions to reconsider that were subsequently filed by the Todds and by Jason on behalf of Jordon's older brothers.

The Todds appeal the juvenile court's order, and Boydston cross-appeals.

## ASSIGNMENTS OF ERROR

The Todds claim that the juvenile court erred when it determined that they did not have the right to intervene as foster parents and that Andrew did not have the right to intervene because he was an adult sibling and not a child sibling. They also claim that the court erred when it (1) granted Leah's motion to change placement to Pospishil, (2) denied the older brothers' motion for placement with them, and (3) overruled the motions to reconsider.

Boydston claims on cross-appeal that the juvenile court erred when it found that Andrew was a "sibling" of Jordon when Andrew and Jordon do not have a common parent. Boydston also claims the court erred when it failed to appoint counsel to represent her or to appoint new counsel to represent Jordon after Andrew challenged the credibility and veracity of her guardian ad litem report.

## STANDARDS OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[2-4] A jurisdictional question that does not involve a factual dispute is a question of law. *Id.* Whether a party has the right to intervene is a question of law. *Id*. When reviewing questions of law, an appellate court resolves the questions independently of the conclusions reached by the trial court. *Id*.

[5] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *In re Guardianship of Jill G., ante* p. 108, 977 N.W.2d 913 (2022).

## ANALYSIS

*Standing.*

[6,7] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Mekhi S. et al.*, 309 Neb. 529, 960 N.W.2d 732 (2021). Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

In its brief of appellee, the State argues, firstly, that the Todds do not have standing to appeal the juvenile court's placement order as foster parents and, secondly, that even if he is a sibling to Jordon, Andrew also would not have standing as a sibling to appeal the juvenile court's placement order. No objection is made to the standing of Boydston, the guardian ad litem. In support of its position that the Todds lack standing, the State cites Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016), which provides as follows:

> (1) Any final order or judgment entered by a juvenile court may be appealed to the Court of Appeals in the same manner as an appeal from district court to the Court of Appeals. The appellate court shall conduct its review in an expedited manner and shall render the judgment and write its opinion, if any, as speedily as possible.
>
> (2) An appeal may be taken by:
>
> (a) The juvenile;
>
> (b) The guardian ad litem;
>
> (c) The juvenile's parent, custodian, or guardian. For purposes of this subdivision, custodian or guardian shall include, but not be limited to, [DHHS], an association, or

an individual to whose care the juvenile has been awarded pursuant to the Nebraska Juvenile Code; or

(d) The county attorney or petitioner . . . .

Under § 43-2,106.01(2)(b), the guardian ad litem may appeal a final order or judgment entered by a juvenile court. Therefore, Boydston has standing to appeal the juvenile court's order, and we may consider the issues she raises in her cross-appeal. In contrast, we must proceed to consider whether, and to what extent, the Todds have standing as foster parents and then consider Andrew's standing as a purported sibling of Jordon.

*Foster Parents Do Not Have Standing to*
*Appeal Under § 43-2,106.01 and Do*
*Not Have a Right to Intervene*
*in Juvenile Proceedings.*

[8-10] We have stated that in assessing standing, the right of appeal in a juvenile case in Nebraska is purely statutory, and that § 43-2,106.01 controls who has the right to appeal from a juvenile court's placement order. *In re Interest of Joseph C.*, 299 Neb. 848, 910 N.W.2d 773 (2018). As set forth above, § 43-2,106.01(2) does not include "foster parent" in the list of persons who may take an appeal. We have held that foster parents who were never awarded custody are not "custodians" or "guardians" for purposes of § 43-2,106.01(2)(c). See *In re Interest of Jackson E.*, 293 Neb. 84, 875 N.W.2d 863 (2016). Furthermore, in *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 974, 870 N.W.2d 413, 420 (2015), we determined that foster parents "do not have a legal or equitable right, title, or interest in the subject matter of the controversy that gives them standing to appeal from the order changing [a child's] placement."

[11,12] In *In re Interest of Enyce J. & Eternity M., supra*, we also stated that although foster parents did not have standing to appeal the order changing placement, we nevertheless had jurisdiction to consider the order dismissing the foster parents' complaint to intervene. We determined that although foster

parents have a statutory right to participate in review hearings, their ability to participate was less than that of a party, and we held that foster parents are not entitled to intervene as a matter of right. *Id.* We further determined that a juvenile court, as a statutorily created court of limited jurisdiction, has only the authority which the statutes confer on it and that therefore, a juvenile court could not allow foster parents to equitably intervene independently of the statutes. *Id.*

We conclude that under this authority, the Todds' status as foster parents did not authorize them either to intervene or to appeal the placement order. In their brief, the Todds recognize this precedent, but they argue that the present case is different because they assert that Andrew is both a foster parent and a sibling. We next consider the effect of Andrew's alleged status as a sibling with regard to intervention and appeal.

*Although Siblings Do Not Have Standing to Appeal Under § 43-2,106.01, They Have a Limited Right to Intervene Under § 43-1311.02(9).*

[13] As noted above, the State argues that even if Andrew is a sibling of Jordon, a sibling does not have standing under § 43-2,106.01 to appeal a placement order. As set forth above, § 43-2,106.01(2) does not include "sibling" in the list of persons who may take an appeal. We therefore agree with the State that even if Andrew is a sibling of Jordon, Andrew qua sibling is not among those listed in § 43-2,106.01 as persons who may appeal a juvenile court order. We further reject the Todds' argument that Andrew may appeal because he is both a foster parent and a sibling. The fact that a person has two different relationships to a child does not confer that person with a right to appeal when neither is a relationship listed in § 43-2,106.01(2). We conclude that the Todds, and Andrew specifically, do not have standing under § 43-2,106.01 to appeal the placement order whether as foster parents, a sibling, or both.

[14] However, as stated above, in *In re Interest of Enyce J. & Eternity M., supra*, we stated that although foster parents

did not have standing to appeal the order changing placement, we had jurisdiction to consider the order dismissing the foster parents' complaint to intervene. Similarly, in *In re Interest of Nizigiyimana R.*, 295 Neb. 324, 331, 889 N.W.2d 362, 369 (2016), in which adoptive parents of a biological sibling of the juvenile sought to intervene, we stated that "[w]e exercise jurisdiction over an appeal from an order denying intervention even if the appellant would not have standing to appeal from the court's final order or judgment on the merits." Under this precedent, we understand that even though the Todds may not appeal the portion of the juvenile court's order changing placement, Andrew may appeal the portion of the order in which the juvenile court denied him leave to intervene as a sibling.

In considering Andrew's arguments regarding the denial to intervene, we refer to *In re Interest of Nizigiyimana R., supra*, wherein we cited *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015), for the proposition that a juvenile court lacks authority to permit an equitable intervention. We further rejected the argument that a sibling had a statutory right to intervene pursuant to § 43-1311.02, which imposed a duty on DHHS to make reasonable efforts with regard to placement with the juvenile's siblings. We determined that the statute, as it existed at the time, specifically limited the right to enforce such duties to parties and that a sibling was not considered a party. We concluded that "the only persons who can enforce [DHHS'] duties under § 43-131[1].02 are a guardian ad litem, on behalf of an adjudicated child, or an adjudicated child's parent, guardian, or custodian." 295 Neb. at 342, 889 N.W.2d at 375.

However, after our decision in *In re Interest of Nizigiyimana R., supra*, the Legislature amended § 43-1311.02 to add subsection (9), which provides as follows: "A sibling of a child under the jurisdiction of the court shall have the right to intervene at any point in the proceedings for the limited purpose of seeking joint-sibling placement, sibling visitation, or ongoing interaction with their sibling." Therefore, § 43-1311.02(9) now

provides a sibling a limited right to intervene for the specific listed purposes.

The juvenile court in this case recognized the limited right of intervention under § 43-1311.02(9), but it determined that Andrew did not have the right to intervene. The court appeared to accept that Andrew was a sibling of Jordon. However, the court determined that § 43-1311.02(9) did not apply to an adult sibling, like Andrew, and that § 43-1311.02(9) only applied to siblings who were children. In their brief of appellants, the Todds claim that the juvenile court erred when it determined that the right of intervention under § 43-1311.02(9) does not apply to an adult sibling.

We note that in her cross-appeal, Boydston, the guardian ad litem, does not dispute the decision to deny Andrew intervention, but she claims that the juvenile court erred when it concluded that Andrew was a "sibling" regardless of Andrew's age. If Boydston's argument that Andrew is not a "sibling" under § 43-1311.02(9) is correct, then we would not need to consider whether the statute applies to adult siblings. We therefore consider Boydston's claim next, because, as will be discussed below, our resolution of that question determines the intervention issue.

Before moving on, we note that when the Legislature amended § 43-1311.02 to give siblings a limited right to intervene, it did not simultaneously amend § 43-2,106.01 to include siblings among those who may appeal a juvenile court order. The statutes therefore appear to create a situation in which a sibling may intervene to advocate on the specified issues but does not have a statutory right to appeal an adverse determination on those issues.

*Andrew Is Not a "Sibling" of Jordon and Therefore*
*Did Not Have a Right to Intervene*
*Pursuant to § 43-1311.02(9).*

As noted above, Boydston, as Jordon's guardian ad litem, may appeal the juvenile court's order pursuant to § 43-2,106.01.

Boydston claims on cross-appeal that the juvenile court erred when it found that Andrew was a "sibling" of Jordon, but that as an adult sibling, Andrew could not intervene. Boydston argues that Andrew and Jordon are simply not siblings regardless of age because they do not have a common parent. We agree.

Neb. Rev. Stat. § 43-1301(1) (Reissue 2016) of the Act defines "[s]iblings" as "biological siblings and legal siblings, including, but not limited to, half-siblings and stepsiblings." The Act also provides in Neb. Rev. Stat. § 43-1311.01(1) (Reissue 2016) that "sibling means an individual who is considered by Nebraska law to be a sibling or who would have been considered a sibling under Nebraska law but for a termination of parental rights or other disruption in parental rights such as the death of a parent." We note that although these definitions set forth the types of siblings that are considered "siblings" under the Act—including half siblings, stepsiblings, and those who would be considered siblings but for a termination or disruption of parental rights—the definitions are circular in that they use the word "sibling" to define "sibling." We therefore resort to rules of construction to determine the meaning of "sibling" under the Act.

[15,16] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Guardianship of Jill G., ante* p. 108, 977 N.W.2d 913 (2022). Black's Law Dictionary defines "sibling" as a "brother or sister," Black's Law Dictionary 1660 (11th ed. 2019), and it defines "brother" as a "male who has one parent or both parents in common with another person," *id.* at 241, and "sister" as a "female who has one parent or both parents in common with another person," *id.* at 1667. The plain and ordinary meaning of "sibling" requires a common parent or parents. Therefore, we conclude that "sibling," under the Act generally and under § 43-1311.02(9)

specifically, means a person with whom one shares a common parent or parents.

Andrew argues that he is a "stepbrother" to Jordon because he and Jordon have siblings in common. Jordon is a sibling to his two older brothers because they share common biological parents, and although the biological parents' rights to the older brothers have been terminated, pursuant to § 43-1311.01(1), they are still considered Jordon's siblings under the Act. Andrew's mother Lesley adopted Jordon's older brothers, and therefore, Andrew shares a common parent with, and is a sibling to, Jordon's older brothers under § 43-1301(1) as a legal sibling and a half sibling. But although Andrew and Jordon share two brothers as common siblings, Andrew and Jordon are not siblings. Having a common sibling does not in itself make two people siblings to one another. Instead, the two must have a common parent or parents, and Andrew and Jordon have no common parent. Andrew is a stepbrother to Jordon's mother Leah, which makes him a stepuncle rather than a stepbrother to Jordon, and sharing two brothers in common does not make Andrew and Jordon siblings in the absence of a common parent.

Because Andrew is not a "sibling" to Jordon under the Act, we need not consider the juvenile court's reasoning that § 43-1311.02(9) does not apply to Andrew because he is an adult sibling rather than a child sibling, and we make no comment on that reasoning. The limited right to intervene under § 43-1311.02(9) does not apply to Andrew because he is not a "sibling" to Jordon. Therefore, based on different reasoning, we determine that the juvenile court did not err when it denied Andrew leave to intervene as a sibling under § 43-1311.02(9).

*Boydston Did Not Request Appointment of Counsel.*

Boydston also claims on cross-appeal that the juvenile court erred when it failed to appoint counsel to represent her after Andrew challenged the credibility and veracity of her guardian

ad litem report. We determine that because Boydston did not request appointment of counsel, the juvenile court did not err when it failed to do so.

Boydston's argument that the juvenile court erred when it did not appoint counsel to represent her or different counsel to represent Jordon appears to focus on testimony by Andrew at the hearing wherein he disagreed with certain aspects of her guardian ad litem report. Boydston also notes a portion of the Todds' brief on appeal in which they assert that her guardian ad litem report raises "misleading and baseless concerns" regarding their care of Jordon and that such concerns were "disproven by the evidence." See brief for appellants at 16.

[17] However, it does not appear that Boydston asked the juvenile court to appoint counsel. Boydston does not assert in her brief that she made such request, and the record does not appear to include such a request. An issue not presented to or decided by the trial court is not appropriate for consideration on appeal. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). Because the juvenile court was neither presented with nor ruled upon a request for appointment of counsel, whether such appointment was warranted is not appropriate for consideration on appeal. Therefore, we do not consider this assignment of error raised on cross-appeal.

## CONCLUSION

We conclude that as foster parents, the Todds did not have the right to intervene as parties and did not have the right to appeal the juvenile court's placement order. As urged by Boydston in her cross-appeal, we also conclude that Andrew is not a "sibling" to Jordon under the Act and that therefore, he did not have a right to intervene pursuant to § 43-1311.02(9). We therefore affirm the juvenile court's order in which it denied intervention by the Todds as foster parents or by Andrew as a sibling. No party with a right to appeal has challenged the juvenile court's change of placement, and we therefore also affirm the juvenile court's placement order.

Affirmed.