IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF GAVIN B.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF GAVIN B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CODY B., APPELLANT.


Filed February 14, 2023.    No. A-22-569.


Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Tara A. Parpart, Deputy Lancaster County Attorney, for appellee.


MOORE, BISHOP, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Cody B. appeals from an order of the Lancaster County Separate Juvenile Court terminating his parental rights to his child, Gavin B. He argues that the State failed to prove by clear and convincing evidence that termination of his parental rights was in Gavin's best interests. For the reasons stated herein, we affirm.

### STATEMENT OF FACTS

Cody is the biological father of Gavin, born in January 2017. Gavin's mother relinquished her parental rights and is not part of this appeal. Gavin was removed from Cody's care following a call to police on October 30, 2020. When officers arrived at Cody's residence, they discovered that Cody was exhibiting signs of a mental health crisis with officers describing him as hyper,

- 1 -

scared, and paranoid. In the police report, officers noted that Cody suffered from schizophrenia, bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and obsessive-compulsive disorder. Cody admitted to officers that he had not slept in a while and that he had used cannabidiol to calm down. They further reported that Cody had claimed that there were bugs in the Wi-Fi and that he was being set up to be murdered. The officers further observed that the residence was cluttered with visible trash, there was grime throughout the residence and cockroaches and other bugs in the shower, there was no reliable heat source and burn marks on a blanket from a nearby space heater, and there was very little food in the refrigerator. The residence was found to be unsanitary and unsafe. Cody was taken to the hospital for mental health treatment and Gavin was placed in the temporary custody of his paternal grandmother.

On November 3, 2020, the State filed a petition, which was later amended, asserting that Gavin came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) as Gavin lacked proper parental care by reason of the faults or habits of Cody; Gavin was in a situation dangerous to life or limb or injurious to his health or morals as a result of Cody's October 30, 2020, mental health crisis which occurred in Gavin's presence; the residence was in an unsafe or unsanitary condition; and that those conditions placed Gavin at risk for harm. An adjudication hearing was held in December 2020, wherein Cody admitted to the allegations contained in the State's petition and the juvenile court found that Gavin came within the meaning of § 43-247(3)(a). Following a dispositional hearing in January 2021, the court ordered Cody to participate in family support services, complete a co-occurring evaluation and follow all the recommendations therein, maintain a safe and stable residence, not possess or consume alcohol or controlled substances, submit to random drug testing, cooperate with a medication assessment, maintain a legal means of support for himself and Gavin, and participate in supervised parenting time.

In January 2021, Cody completed a co-occurring evaluation which recommended residential mental health treatment due to Cody demonstrating serious difficulty functioning in several dimensions. The Department of Health and Human Services (DHHS) received the evaluation recommendations in early March and subsequently completed a referral for residential mental health treatment.

During an April 2021 review hearing, the juvenile court found that "poor progress has been made by [Cody] to alleviate the causes of the Court's adjudication and [Gavin's] out-of-home placement." The court also found that

reasonable efforts, including an initial diagnostic interview, a substance use evaluation, substance abuse treatment, residential mental health treatment, random drug and alcohol testing, family support services, relative placement of the juvenile, and an EDN [Early Development Network] referral, have been made to eliminate out-of-home placement of Gavin.

At the review hearings held on July and October 2021, and January 2022, the juvenile court found that Cody had made poor progress or no progress in alleviating the causes for the court's adjudication and Gavin's placement in out-of-home care.

On January 26, 2022, the State filed a petition to terminate Cody's parental rights under Neb. Rev. Stat. § 43-292 (Reissue 2016) for the reasons that (1) Cody had substantially and

continuously or repeatedly neglected and refused to give said juvenile or a sibling of said juvenile necessary parental care and protection under § 43-292(2); (2) that reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court had failed to correct the conditions leading to the adjudication under § 43-292(6); and/or (3) the juvenile had been in an out-of-home placement for fifteen or more months of the most recent twenty-two months under § 43-292(7). A hearing on the motion for termination of parental rights was heard on June 27. Testimony was adduced from the DHHS caseworker. The State offered multiple exhibits including the prior case plans and court reports.

Following the hearing, on June 28, 2022, the court entered its order terminating Cody's parental rights based upon its finding that clear and convincing evidence existed to support termination under the statutory bases alleged and that termination was in Gavin's best interests. Cody now appeals from the order terminating his parental rights.

## ASSIGNMENT OF ERROR

Cody's sole assignment of error is that the State failed to prove by clear and convincing evidence that termination of his parental rights was in Gavin's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Jordon B.*, 312 Neb. 827, 981 N.W.2d 242 (2022). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Mateo L. et al*, 309 Neb. 565, 961 N.W.2d 516 (2021).

## ANALYSIS

Cody assigns only that the district court erred in finding that the State proved by clear and convincing evidence that termination of his parental rights was in Gavin's best interests.

In Nebraska, the grounds for terminating parental rights are codified in § 43-292. *In re Interest of Mateo L. et al, supra*. That statute contains 11 separate subsections, any one of which can serve as a basis for termination when coupled with evidence that termination is in the best interests of the child. *Id*. It is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *Id*.

### STATUTORY BASIS FOR TERMINATION

Although Cody does not assign or argue that the evidence was insufficient to support termination under the statutory bases, for the sake of completeness, we review the findings of the district court regarding the statutory basis for termination.

As relevant here, in its petition, the State sought to terminate Cody's parental rights under § 43-292(2), (6), and (7). Subsection 7 provides for termination of parental rights if "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months[.]" It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of*

*Brelynn E.*, 30 Neb. App. 723, 972 N.W.2d 442 (2022). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *Id*.

Here, the evidence established that Gavin was removed from Cody's care on October 30, 2020. At the time of the June 27, 2022, termination hearing, Gavin had been in out-of-home care for 19 months of the most recent 22 months. Because Gavin had been in out-of-home care for more than 15 months out of the most recent 22 months, we find no error in the district court's findings that termination under § 43-292(7) was proper. We need not consider the evidence in relation to the additional statutory bases. See *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002) (once appellate court determines the State has established by clear and convincing evidence that termination of parental rights is appropriate pursuant to § 43-292(7), appellate court need not consider issues relating to sufficiency of evidence concerning other statutory provisions identified by trial court as grounds for termination).

BEST INTERESTS

Cody assigns that the State failed to prove that termination of his parental rights was in Gavin's best interests. He argues that the State failed to use reasonable efforts to address his mental health. He contends that the biggest barrier to reunification with Gavin was his mental health and that the State did not reasonably provide Cody with help obtaining services to address the concerns and he was not given adequate time to do so.

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Brelynn E., supra*. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id*.

A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id*.

When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Jay'Oni W. et al.*, 31 Neb. App. 302, 979 N.W.2d 290 (2022). The 15-month condition contained in § 43-292(7) provides a reasonable timetable for parents to rehabilitate themselves. *Id*. Furthermore, children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id*.

Here, during the trial, Cody's counsel argued that DHHS did not set up services for Cody to attend inpatient treatment and that, during the time he was incarcerated, he was unable to participate in mental health treatment. The record shows that Cody was incarcerated from June 2 to 24, 2021, and was again incarcerated at the time of the termination hearing. Notwithstanding

his brief periods of incarceration, Cody had approximately 15 months to enter and complete residential mental health treatment. Although he completed his co-occurring evaluation, he did not follow the recommendations to attend and complete residential mental health treatment. The caseworker testified that a referral had been completed for residential treatment, but that Cody refused to engage in the mental health services. It is clear that the short amount of time that Cody was incarcerated did not prevent him from entering treatment throughout the pendency of the case. Court reports establish that, during discussions with case workers, Cody continuously refused to enter inpatient treatment. Additionally, although Cody voluntarily checked himself into Integrated Behavioral Health Services in December 2021, he left that same month without completing the program. The report from the facility indicated that during his time there, Cody was resistant to treatment and medication changes. Cody was also admitted to the Bryan West Psychiatric Ward on at least two occasions from March 5 to 15, 2021, and from the second week of April until May 6, 2022. Although the facility recommended residential mental health treatment at that time, Cody again refused this treatment.

Additional evidence established that Cody failed to complete other court orders to address the reasons Gavin was removed from his care. Cody was unable to provide safe and stable housing to support Gavin and, even when Cody obtained housing, he refused to allow caseworkers entry due to the unsafe conditions in his home. The caseworker further testified that Cody did not consistently stay in contact with her, provide her with updated contact information, or meet with her.

The caseworker further testified that she believed that termination of Cody's parent rights was in Gavin's best interests. She reported that Gavin was doing well in his grandmother's home, that Cody had failed to address his mental health concerns, and that Cody failed to engage in court-ordered services as required. The caseworker testified that since being assigned to the case in March 2022, she had only met with Cody once in person, which occurred in May at the Lancaster County Jail. The caseworker acknowledged that while incarcerated, Cody was unable to participate in mental health services.

Cody additionally did not participate in family support services and was unsuccessfully discharged twice. Thereafter, he refused to participate in family support services altogether. He further failed to consistently submit to random drug testing having only participated in one-third of the tests offered to him. Of the tests Cody completed, some were diluted and others were positive for marijuana and alcohol.

Throughout the pendency of the case, visitation services had been set up to occur twice per week. In the January 2021 court report, the caseworker indicated that visitation had occurred in Cody's home but had to be moved to the agency due to Cody making "threatening and concerning statements." In the April 2021 court report, the caseworker indicated that visits were placed on hold due to Cody having missed visits with Gavin. Cody reported to the caseworker that he wanted to have visits with Gavin, but that he did not think it was in Cody's best interests to have them at this time. The caseworker reported that Cody had been offered 18 visits but had only participated in six of those visits. In the July 2021 court report, supervised visitation was still on hold due to missed visits and Cody being incarcerated. The July 2021 report indicated that Cody had been offered five visits with Gavin but attended only three of them. The report included that Cody's last

visit occurred on June 1, 2021, where the visit was ended prematurely due to Cody talking about feeling suicidal and concerns of alcohol use during the visits. After making comments to the visitation worker about his home being unsafe for Gavin, making suicidal comments, and smelling of alcohol, in July 2021, supervised visitation with Gavin was suspended. At the time of the termination hearing, Cody's visits remained suspended.

Under our de novo review, the underlying factor that weighs heavily in this best interests analysis is Cody's unwillingness to fully acknowledge and address the seriousness of his mental health conditions and his need for inpatient treatment as recommended. His failure to address his mental health needs has led to his inability to provide for Gavin's needs. For example, Cody made suicidal comments in the presence of Gavin during a visit and indicated that having visitation with Gavin was not in his own best interests. Although he has received some treatment, the evidence showed that he refused to participate fully or complete a mental health program, instead being admitted into the psychiatric ward multiple times and being incarcerated at least twice during the pendency of the case. Although he had checked himself into treatment, the provider reported that Cody was resistant to treatment including medication changes. Cody's refusal to fully and consistently address his mental health concerns has led to very aggressive and concerning behaviors such as sending threatening emails to the caseworkers and having to move or suspend visits due to threatening or suicidal comments. Cody's conditions directly impact his ability to parent and provide for Gavin's needs. Cody's continued unwillingness to engage in mental health and other services offered by the State demonstrates he is either unable or unwilling to rehabilitate himself within a reasonable period of time and Gavin should not be suspended in foster care awaiting certain parental maturity. Accordingly, we find that the juvenile court did not err in finding that the State had satisfied their burden to prove that termination was in Gavin's best interests. This assignment fails.

## CONCLUSION

For the reasons stated above, we find that the juvenile court did not err in finding that sufficient evidence was established to prove that statutory bases existed to terminate Cody's parental rights and that termination of his parental rights was in Gavin's best interests.

AFFIRMED.